INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v.
ALICE CULPEPPER ET AL.

Delivered June 9, 1898.

### 1. Contributory Negligence—Charge of Court—Issue.

Whether or not an engineer was guilty of contributory negligence in stopping his train near a cut and curve concealing it from the view of an engineer of a train which ran into it from the rear, is for the jury, where the track for a mile in front of the former train was straight, and there is conflicting evidence as to the necessity of an immediate stop to remedy a hot box, and as to the necessity of the additional room under the engine afforded by the cattle guard at the point where the stop was made.

### 2. Same—Duties of Engineer and Conductor.

It is the duty of an engineer to give the signal provided by the rules for the flagman to be sent back upon stopping the train between stations for a purpose known only to him, and not to the conductor, although the rules do not expressly require him to do so, where they have been practically construed to include such duty; but his failure to do so does not excuse the conductor under whose direction the train is run from complying with his duty to send back the flagman.

### 3. Same—Presumption of Duty Performed.

An engineer is not necessarily guilty of contributory negligence precluding recovery for his death caused by another train running into the rear of his train, in going under his engine to remedy a hot box without ascertaining whether the conductor had performed his duty in sending back a flagman to protect the train when it stopped.

### 4. Negligence Immaterial, When.

The neglect by an engineer of his duty upon stopping his train between stations to give the proper signal to the conductor to send back a flagman to protect the train does not preclude recovery for his death resulting from the failure of the conductor to send back a flagman, where it was the conductor's duty to do so without reference to signals from the engineer and he was aware of the conditions creating such duty in ample time to have performed it and prevented the accident.

### 5. Same—Proximate Cause.

The negligence of one party which will prevent him from complaining of that of another must have been such as proximately contributed to the result complained of, though it may not be the sole cause of the injury.

### 6. Same—Charge of Court.

A charge which merely particularizes the acts and omissions relied on as contributory negligence and submits the question whether or not they constituted negligence, is not subject to the criticism that it requires all such acts and omissions in order to constitute negligence, where the other charges permit the jury to find the negligence in any one of such acts or omissions; and if defendant desires a more distinct separation and submission, he should request a special charge.

### 7. Pleading—Allegation of Damage.

A petition by a wife and child in an action for the negligent killing of their husband and father is not bad on general demurrer because it does not expressly allege an ad damnum clause that they were damaged, where it does allege their relations to him, his contribution to their support, his earnings, and the facts showing defendant's responsibility for his death, and prays judgment for a specified amount of damages.

### 8. Parent and Child—Damages for Death.

A minor daughter is entitled to recover for the negligent killing of her father, although living at the time with her mother from whom he had been divorced by a decree which made no provision as to the daughter, and there is no proof that he contributed to her support, since she had a legal right to a support from him of which she was deprived by his death.

**9. Charge of Court—Request.**

Appellant can not complain of an instruction because of a form of expressing the law identical with that employed by him in requested instructions which were refused.

**10. Same—Negligence—Contributing Causes.**

A charge which prevents recovery for the death of a person if his negligence was the sole cause of it, is not prejudicial to defendant as indicating that contributory negligence alone would not be sufficient to defeat a recovery, where the jury are clearly informed by other charges that contributory negligence would prevent recovery, although not the sole cause of the accident.

**11. Same—Request Necessary, When.**

If there is a particular act or omission which the court failed to particularize in its charge on contributory negligence, and which defendant desires to have submitted more specifically, he should request a special charge embracing it.

APPEAL from Smith. Tried below before Hon. J. G. RUSSELL.

*Duncan & Jones,* for appellant.

*Marsh & McIlwaine, J. W. Fitzgerald,* and *W. J. Goodman,* for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—This cause was before the Court of Civil Appeals of the Fourth District (38 Southwestern Reporter, 818), and before the Supreme Court (90 Texas, 627), upon appeal from a former judgment in favor of Mrs. Culpepper.

The suit was prosecuted by appellee, the widow of J. J. Culpepper, in behalf of herself and of Maud and Chris Culpepper, minor children of J. J. Culpepper by a former wife, to recover damages for the killing of the husband and father, alleged to have been done by negligence of appellant. The last trial resulted in verdict and judgment for plaintiff for $10,800, apportioned as follows: To Mrs. Culpepper $3400, to Chris Culpepper $3400, to Maud Culpepper $4000.

Culpepper, before his marriage with appellee, had been divorced from his first wife, the mother of Chris and Maud, by a decree which gave to him the custody of Chris, but made no provision as to Maud. At the time of the father's death Chris was 12 years and Maud 10 years of age. Maud remained with her mother, who is still living. The evidence showed that Culpepper devoted his earnings to his wife and son, and there was no proof that he contributed to the support of his daughter.

Culpepper was a locomotive engineer in the service of appellant, and when killed was operating the engine of the front section of a freight train. The rear section was following behind, in charge of other servants. One of the boxes of his engine becoming so hot that there was danger of the journal being burned off and of a wreck resulting, Culpepper stopped the train on the main track, between two stations, to remedy the trouble. In doing so he sounded the whistle as a signal for the train to stop, and after it had stopped, he backed the train a short distance in order to place his engine over a cattle-guard, which was done for the

reason that, in "packing" the box, it was necessary for him to go under the engine, for which the cattle-guard afforded more room. Having done this, he gave another signal which signified to the brakemen that they were to hold the slack out of the train. He then went under the engine to work upon the box, and, while he was so engaged, the second section collided with the rear end of his train and pushed the engine over his body, causing his death. It is conceded that those operating the rear section were not at fault, as the first train was so situated that they could not see it in time to stop their train, and they did all that was in their power after discovering it to prevent the collision. The plaintiff's contention is that the collision is attributable to the negligence of the conductor of Culpepper's train in failing to send back a brakeman with flag and torpedoes to give notice to the engineer of the other train; and the defendant's contention is that the catastrophe was caused, or at least contributed to, by Culpepper's own negligence in stopping his train at such place, and in failing to give a signal for sending out the flagman, and in going under the engine without having assured himself that the proper precautions to prevent a collision had been taken. The rules of the company provide that all trains are run under the direction of the conductors, except when their directions conflict with the rules, or involve risk, in which case the engineer is held equally responsible. Conductors are held responsible for the performance of their duties by brakemen.

No train is allowed to be stopped on the main track (except regular stops) without a flagman being sent back at once, with torpedoes and a flag. This duty is to be performed by brakemen, who are required to get off of freight trains, for the purpose, before the trains have stopped. Conductors are required to see that brakemen do not deviate from this rule.

The manner in which the torpedoes and the flag are to be used and the distance they are to be placed behind the train are prescribed in detail. It is further provided that when a train "from any cause has to stop on main track, in such a position as to endanger it from approaching trains, it must be protected" in the manner prescribed; and by another rule, that "all trains must be run under the supposition that an irregular train is liable at any moment to overtake them on any part of the road." Freight trains traveling in the same direction are permitted to pass stations five minutes apart. Their scheduled rate of speed is eighteen miles an hour.

There is no rule which in express terms requires the engineer to give any signal for sending out a flagman in case of a stop upon the main line, but under the head of "Whistle Signals" it is provided, "Five short blasts of the whistle is a signal to the flagman to go back and protect the rear of his train." Under "Rules Governing the Use of Signals" it is provided, "All signals must be used strictly in accordance with these rules, and trainmen should keep a constant lookout for signals." It is further required that engineers, when they stop at any place where a flagman is likely to be sent out, must call in such flagman before starting, by the usual signal whistle. Only the engineer is authorized to give signals by whistle.

The testimony renders it evident that, at some times, the occasion for stopping will be known only to the conductor, and at others that it will be known only to the engineer. When the latter is the case, the evidence is practically uncontradicted that the engineer should give the signal for sending out the flagman, in order to inform the conductor that a stop requiring such a precaution is to be made. That it is made his duty to do so by tne rules, is the practical interpretation which has been given to them by the employes of this and other roads. It is also shown, however, that without such signal, it is the duty of the conductor, when the train has stopped, to send out the flagman to protect the train. The evidence on the subject, showing the practical application which has been given to the rules, is in accord with them, and we conclude that it was the duty of Culpepper, when he determined to stop the train, to give the signal for the flagman to be sent back; but also that it was the duty of the conductor, without the signal, to take that precaution. It is conceded that the signal was not given by the engineer.

The weight of the evidence shows, however, that not only were the two signals before mentioned given, showing that the train was to be stopped, but that it had been standing at least fifteen minutes, and probably longer, when the collision occurred. The testimony of the conductor of Culpepper's train is that he did not know the occasion of the stop, and that if the signal for flagman had been given he would have caused the brakeman to drop off before the train stopped. His evidence further shows, however, that he realized that the stop was such as to make it proper to send back the flagman, since he states that as soon as the train stopped he started back a flag and went himself. His explanation of the collision is that the time, which he fixes at three minutes, elapsing between the stopping of his train and the collision was not sufficient to enable him to give the necessary notice to those on the second train. As to the time which elapsed and the fact of his attempting to send or carry back the warning, he is contradicted by the weight of the evidence. The jury could properly have found that, though the signal was not given, yet the conductor knew that the stop was of such a character as to make it his duty to give the required notice to those on the other train; that he had ample time after realizing this to have given such notice, and that he negligently failed to do so. In this view of the case he possessed all the information which a signal from the engineer would have given him.

The train was stopped by Culpepper near a cut and a curve which hid it from the sight of the engineer on the second train, until the latter was so close that it could not be stopped before colliding with the other train. The track for a mile or more in front of Culpepper's train was straight, so that, for that distance further on, his train could have been seen by those approaching from behind, had he gone on. It is contended that in stopping in this place he was guilty of negligence. According to the evidence, the necessity for stopping when he did depended on the condition of the hot box and the imminency of the danger of the journal being off. The evidence is that this box was very hot, and it was stated that when

such is the case the duty of the engineer is to stop at once and remedy it. Another reason for his selecting this place is, that there he had more room under the engine to do his work. This was a situation which called for the exercise of judgment on his part, and whether or not he acted prudently was a question for the jury, upon which we do not feel at liberty to disturb their verdict. It is further urged that he was guilty of negligence in going under the engine without ascertaining that the flagman had been sent out. It was his duty to go under the engine, and if he had not in other ways been guilty of negligence, we do not see how his doing so could be considered such. In fact, we think that both of these latter contentions depend upon the first. He had the right to stop the engine and to go under it to fix the box, and provision was made by the rules for protecting him while so doing. If his omission to give the signal was not negligence which contributed to his injury, it is difficult to see how his other acts could be.

We therefore conclude that there is nothing in the fact that he stopped where he did and that he went under the engine, when disconnected from his failure to give the signal for the flagman, which necessarily shows the want of ordinary care. His failure to give such signal was, we think, an omission to perform a duty which would have precluded plaintiff from recovering, but for other facts appearing. Its purpose would have been to notify the conductor to do that which the conductor knew he ought to do. If the accident had resulted from ignorance on the part of the conductor of the fact that the stop was such as to require the sending out of a flagman, or if he had even forgotten his duty, the failure of the engineer to give the signal to notify or remind him would properly be considered negligence contributing to his injury. Or if the facts were, that the failure to give the brakeman notice so that he could get off the train before it stopped, had left insufficient time for arresting the rear train before the collision, it would be hard to resist the conclusion that the omission of the signal contributed to the result. But both the conductor and the brakeman knew of the fact which made it proper to set out the torpedoes and flag as soon as the train stopped, if the conductor's statement be true; and, if the other evidence is true, there was ample time to have done all that was required to stop the approaching train before the collision occurred.

The importance of a signal from the engineer is necessarily greater in some situations than in others. Often a train following another might be so close that a stop of the front one would precipitate a collision, if notice were not given by the signal in order that the brakeman might get off at once and before the stopping of the train. In such cases it would be clear that the collision resulted from the omission of the signal. But in other situations the train might come to a stop under such circumstances and remain standing so long that every one would necessarily know that the track should be guarded as required, and have ample time to take the precautions. While in such cases it might be the duty of the engineer to give the customary signal before stopping, the failure to give

it could hardly be considered a proximate cause, since the situation subsequently developing would show that its omission was immaterial. The question presented under such circumstances would be analogous to that which sometimes arises when there is a failure to give the required signals for a crossing. The statute imperatively requires that such signals be given, but as the object is to give notice of the approach of the cars, the omission to give them is immaterial where the party complaining saw or knew of such approach as soon as the signals would have caused him to know it. There is a failure to perform a duty, but it is not a cause of an injury. While we do not say that there is not evidence from which the jury could have found that the failure of Culpepper to signal for the flagman was negligence and that it proximately contributed to his injury, we think, in view of the distance of these trains apart, the time which elapsed between the stop and the collision, the knowledge of the conductor that the circumstances required the usual precautions and the full opportunity given for him to adopt them, the jury were authorized to conclude that the negligence of the conductor was the proximate cause, and that the omission of Culpepper did not contribute. It is urged that, as Culpepper had not given the signal for the flagman to go back, he had no right to assume that he had done so, and hence his act in going under the engine without informing himself was negligent. There is certainly force in the contention. But when the circumstances were such as to give to the conductor all the notice which the signal would have given, his duty was the same as if he had received such notice through the signal.

It was upon the performance of that duty by the conductor, occupying the position of master, that Culpepper had to rely. He could not take advantage of a failure to perform it if his own omission of duty operated in causing his injury; but such omission would not preclude him when it had no part in the result.

The case is not as if the duty of the engineer had been to do, or participate in the doing of, the things necessary to give warning to the other trains. Those duties were incumbent on the conductor, and it was only the engineer's duty to give the conductor notice, which he had without the signal.

The first assignment of error is based upon the overruling of a general demurrer to the petition, the defect asserted being the absence of a direct allegation that the plaintiffs were damaged by the killing of Culpepper. The petition alleged the relationship of plaintiffs to Culpepper (that of wife and minor children), his contributions to their support, his age, his habits of sobriety and industry, his earnings, the facts showing defendant's responsibility for his death, and prayed for judgment for $50,000 damages "for and on account of his death." It simply omitted the ad damnum clause. It was sufficient on general demurrer. Hoggland v. Cothren, 25 Texas, 345.

We are also of the opinion that Maud Culpepper was entitled to recover, since she had the legal right to a support from her father of which she was deprived by his death. Railway v. Spicker, 61 Texas, 427.

The charge of the court, in specifying the conduct of Culpepper upon which the charge of contributory negligence was based, did not mention his going under the engine without having learned whether or not the train was properly protected. This omission is assigned as error. In other instructions the court fully informed the jury as to what would constitute contributory negligence, and instructed that if Culpepper had been guilty of it plaintiff could not recover. It also instructed, "as to what acts or omissions (if any) on the part of said Culpepper would constitute negligence, and as to whether that negligence proximately contributed to his injuries, are questions to be decided by you, applying all the facts in evidence to the instructions herein given you." If there was a particular act or omission which the court failed to particularize and which appellant desired to have submitted more specifically, it should have requested a special instruction embracing it. As we have before indicated, however, it seems to us that the question whether or not deceased properly went under the engine depended upon the question which was submitted, whether or not, in what he had previously done and omitted, he had failed to exercise proper care.

The sixth paragraph of the charge is attacked, because it is claimed it authorized the jury to find for defendant only in case they should find that the death of Culpepper was wholly caused by his negligence. This paragraph is an affirmative one in defendant's favor, and does not preclude the jury from finding in defendant's favor, as in other paragraphs they are fully instructed to do, if Culpepper's negligence contributed to his death. The conductor's testimony would have authorized the jury to find that Culpepper's omission to signal for the flagman was the sole cause of the collision, and it was proper for the court to submit that question affirmatively, as it did, without excluding the effect of such negligence if it merely co-operated with that of the conductor.

The ninth, tenth, eleventh, twelfth, and thirteenth assignments complain of the seventh, eighth, ninth, tenth, and eleventh paragraphs of the charge, because thereby the court instructed affirmatively in favor of defendant, that if the acts and omissions supposed were negligence on the part of Culpepper, and that it was a proximate cause which, concurring with the negligence of defendant, produced the injury, plaintiff could not recover; and affirmatively, in favor of plaintiff, that unless such negligence was a proximate cause which contributed to the injury, it would not preclude a recovery. This form of expressing the doctrine of contributory negligence as a proximate cause is identical with that employed in the special charges requested by the counsel for appellant and refused by the court. Indeed, paragraphs seven and nine of the charge are almost identical throughout with the tenth and fifth special charges. We do not think appellant is in a position to make this objection. Railway v. Sein, 89 Texas, 63.

But we think the instructions are correct. Negligence of one party which will preclude him from complaining of that of the other party must have been such as proximately contributed to the result of which he

complains.   The doctrine of proximate cause applies, though the negligence which contributes need not be the sole cause of the injury.   This the court fully explained.   When the act of plaintiff, asserted to have been negligent, has so plainly contributed to the result that no difference of opinion could exist as to its co-operation, it is held error for the court to submit the question whether or not it did so contribute, not because of any incorrectness in the theory of such a charge, but because it states as an issue that about which there could be no dispute.   We have endeavored to show that one of the most prominent questions in this case was whether or not Culpepper's failure to give the signal contributed proximately to the result.   We do not understand the decision on the former appeal to have been contrary to this.   Our understanding of what is said by the Supreme Court is, that the charge there discussed was calculated to mislead, because it required that Culpepper's negligence should have so far contributed that without it the accident would not have occurred; and in addition, that it should have been the proximate cause.

If it contributed in the manner specified it was a proximate cause, and the further instruction seemed to require something more which the jury might have misunderstood.   This is what we understand to have been held.   That negligence must proximately contribute to the result in order to constitute a defense can hardly be denied; that the evidence in this case made it proper for the court to so instruct the jury, we think equally clear.   The charge given, while using the words proximate cause, left no doubt as to what was meant, and required no more than that Culpepper's negligence should have co-operated in producing the result.

A further proposition is based upon these assignments which is scarcely raised by them.   It is as follows:  "The court erred in the charges above quoted in grouping the acts and omissions of Culpepper, alleged by defendant to constitute contributory negligence, and instructing the jury that if they believed that such conduct and such "acts or omissions" of Culpepper constituted negligence, and that such negligence contributed to the injury, they would find for the defendant.   Whereas, if said Culpepper was guilty of any one of such acts or omissions, and was thereby negligent, and such negligence contributed to the injury, plaintiffs could not recover."

The assignments seem to plainly present only the objection to all of the instructions mentioned, viz., the manner of charging upon proximate cause, by simply referring to the paragraphs by number and then pointing out the particular matter contained in them which is objected to.   But we do not think that the charges require that the jury find all of the acts and omissions specified and that all were negligent and all contributed.   They merely particularize the matters relied on as contributory negligence, and submit the question whether or not such conduct was negligence.   The other charges before specified permitted the jury to find such negligence in any of the acts or omissions.   If a more distinct separation and submission of the matters was desired, special charges should have been requested.

The fifteenth special charge was properly refused, for the reason that the charges given contained sufficient instructions upon contributory negligence.

The former decision of the Supreme Court settled the question of fellow servants, and placed the conductor in the attitude of a vice-principal. The evidence showed the same authority of superintendence, control, and command intrusted to him as that upon which that opinion is pre-dictated.

The court did not err in refusing to instruct a verdict for defendant. The assignments of error, questioning the sufficiency of the evidence, are disposed of by what has preceded.

*Affirmed.*

Writt of error refused.