# CHARLESTON

MAY v. CHARLESTON INTERURBAN RAILROAD CO.

Submitted March 2, 1915.   Decided March 16, 1915.

1. TRIAL—*Motion to Exclude Evidence—Waiver.*

   If after the adverse action of the court on his motion to exclude plaintiff's evidence, defendant introduces to the jury his own evidence, he thereby waives the benefits of his motion to exclude plaintiff's evidence. (p. 799).

2. ELECTRICITY—*Injuries—Evidence—Res Ipsa Loquitur.*

   Where, as in this case, the evidence tends to show that plaintiff's injuries resulted from the fall of his horse caused by a shock received from one of the rails of defendant's railway, overcharged with electricity, and dangerous to persons and animals travelling on the street, and the character of the fall and the injuries to horse and rider and the electrical manifestation on the track at the instant of the fall, as proven, are not inconsistent with other facts proven and the known and proven nature of electricity so employed when there are defects in the rails, or in the bonds binding them, the jury may properly infer, in the absence of evidence showing that the bonds were not broken and that the track was in good repair and condition, that the injury resulted from a defective and dangerous track, and the rule res ipsa loquitur applies. (p. 799).

3. NEGLIGENCE—*Evidence—Res Ipsa Loquitur.*

   The rule res ipsa loquitur is, that when the agency causing the injury is under the management and control of defendant, and the injury is such as in the ordinary course of things does not occur, it affords reasonable evidence, in the absence of explanation by defendant, that the injury resulted from negligence.  (p. 801).

4. ELECTRICITY—*Negligent Operation—Presumptive Proof.*

   When a horse being driven upon a public street is injured by contact with the rails of an electric street railway, and falls suddenly on the track and his rider also comes in contact with such rail and is shocked thereby, such facts are presumptive proof of negligence by the company in the operation of its road.  (p.802).

5. SAME—*Electric Shock—Negligence—Burden of Proof.*

   Where the evidence is as assumed in points two and four of the syllabus, and witnesses present prove that there were unusual electrical phenomena on the rail at the same instant, and that the fall of the horse was not like an ordinary stumble, but as if shot, or struck with electricity, a case is not presented for the application of the rule respecting two equally plausible causes for the injury for one of which defendant is, and for the other it is not liable, denying recovery unless negligence of defendant causing the injury be shown.  (p. 803).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Kanawha County.

Action by Thomas May against the Charleston Interurban Railroad Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Chilton, MacCorkle & Chilton* and *T. S. Clark,* for plaintiff in error.

*E. E. Robertson* and *S. C. Burdett,* for defendant in error.

MILLER, JUDGE:

Plaintiff obtained a verdict and judgment for two thousand dollars, for personal injuries due to the alleged negligence of defendant in permitting its railway track, on Virginia street, in the City of Charleston, at the point where the injuries were sustained, to become so charged with electricity as to be dangerous to persons and animals travelling thereon.  Plaintiff alleged that while riding over said street on horseback

and without fault on his part the horse he was riding suddenly stepped upon one of the rails of said track and received a violent shock therefrom, causing him to then and there suddenly fall to the ground, and upon plaintiff, injuring his leg and otherwise bruising and hurting him and causing him permanent injury.

Defendant company seeks reversal here of that judgment, and the errors assigned and relied on are: First, the overruling of its motion, at the conclusion thereof to exclude plaintiff's evidence and direct a verdict in its favor; second, the refusal of the court, on the conclusion of the evidence on both sides, to instruct the jury peremptorily to return a verdict for defendant; third, the denial of its motion, after verdict, to set the same aside, and award it a new trial, for the reasons assigned, that the same was contrary to the law and the evidence.

Many of our decisions say that a defendant's motion to exclude the evidence of plaintiff is waived, if, after the adverse action of the court thereon, defendant proceeds with the trial and introduces to the jury his evidence on the issues joined. So we need not here separately consider this point. The other points of error manifestly present but one question, namely, is the verdict sustained by a fair preponderance of the evidence? If it is, of course the judgment must be affirmed.

The main issues fought out before the jury were, whether the fall of the horse was due to the alleged negligence of defendant, or to stumbling of the horse by striking his foot on the paved street or the steel rail of defendant's track, unaffected by any supposed negligence of defendant, and whether in fact the rail was charged with electricity in a way to have caused the fall of the horse. That the horse did fall upon the track, injuring plaintiff, as charged, is conceded; and the testimony of the plaintiff, and several other witnesses, disinterested, who were present and observed the fall of the horse and the character thereof, and the electrical manifestation on the track at the instant of the fall, if not contrary to the physical facts, and known and proven characteristics of electric currents over the wires, motors and tracks employed by defendant in the operation of its railway at the time of the injuries, certainly justified the verdict of the jury on the

fact of negligence. The evidence of the witnesses was, that the horse fell as his foot struck the track, not as if stumbling in the ordinary way, but as if shot, that his feet fell right from under him, and that he fell straight down. These witnesses were all familiar with horses, and skilled in observing and handling them, most of them were horse men, traders in horses, and some of them say they knew the fall was not a stumble, that it was peculiar and not like a stumble, and for this reason their attention was particularly attracted by it. And several witnesses concur in saying that as the horse struck the rail with his foot sparks flew out, one says it looked more like a string of fire than sparks. Plaintiff also swears that as he fell on the pavement he struck his finger against the rail, and that it knocked him over, gave him a twist, and that was when the broken bone of his leg ran through the flesh, causing him great pain. A buggy was passing over the track at the same time, and some of the witnesses, including the man riding in the buggy, witnessing the occurrence, swear positively, that when the iron tire of one of the wheels, the other wheels having rubber tires, struck the same rail, it jumped up a foot or more. All the expert witnesses concur in saying that when bonds on the rails are broken or defective the rails at the bonds may become very hot, and thereby become welded together, producing a new bond.

As to whether it was possible for the electricity in the rails, employed by defendant for motive power as it was, to escape from the rail and cause the injury as alleged, two expert witnesses, one for plaintiff and one for defendant, the defendant's witness being its track foreman, concur in saying that if the bond between the rails was broken or defective, a horse or man coming in contact with the rail, as claimed by plaintiff, would receive a shock, and would be liable to get burned, particularly if the contact was between the point where the bond was broken and the power house. And defendant's track foreman says he has seen horses fall on the track from such shocks when there were bad bonds. Another expert witness for defendant, an electrical engineer, having a college degree as such, and manifesting a great deal of technical learning, and with considerable experience, particularly in the practical construction of electrical machinery, and in-

stalling electrical plants of various kinds, said that ''Theo-retically and practically there is no possible way that a horse could get a shock sufficient to knock him down off of the street car rail only.'' This witness goes into considerable detail in explaining the operations of electric currents over the wires, and rails, to justify his opinion that the accident and injury to plaintiff could not have resulted in the manner described by plaintiff's witnesses.

Strange it is that no tests were made at the time of the injury or afterwards to ascertain whether the bonds on the rails were broken or defective; or whether the rail which was supposed to have done the injury was in fact charged with electricity as claimed. Plaintiff's counsel excuse him by say-ing that the rails were mostly under ground, or flush with the street pavement, and buried in brick and cement, and entirely under the control of defendant company, and, that it was the duty of defendant, denying defective bonding of the rails, to have made all proper tests, and to overcome by positive evidence the presumption of negligence, arising from the fact of the accident and attendant facts and circumstances tending to show negligence. We think there is much force in this position of counsel, and that the general rule that where evidence is in the possession of one party and he has the means of producing it, and fails to do so, the conclusion may be drawn that if produced the evidence would be against him.

True we have no positive evidence that bonds on the rails at the point of the injury were broken or defective; and whether the dangerous condition of the rail causing the injury was due to defective bonding or to defects in other appliances employed by defendant does not clearly appear by any affirmative evidence of the witnesses. The question then is, do the facts proven and above briefly detailed, by a fair pre-ponderance, establish the fact of negligence, justifying the verdict? We have concluded that they do. We think the jury could reasonably conclude that the rail struck by plain-tiff and his horse was overloaded with electricity, and that it was escaping as described by the witnesses. Besides the injury to plaintiff personally, the evidence tends to show the horse's hoof was also burned or injured by the escaping

electricity. We can not refuse to give weight to the evidence of the physical facts occurring at the instant of the horse's fall, nor deny to the jury the right to all reasonable inference therefrom. If these physical manifestations were present, as the witnesses say, and the jury had the right to believe, a case was presented for the application of the rule *res ipsa loquitur*. Briefly stated that rule is that where the agency causing the injury is under the management and control of the defendant, and the injury is such as in the ordinary course of things does not occur if those having such management and control use proper care; it affords reasonable evidence, in absence of explanation by defendant, that the injury resulted from negligence. *Bice* v. *Wheeling Electrical Co.*, 62 W. Va. 685; *Snyder* v. *Wheeling Electrical Co.*, 43 W. Va. 661, and other cases cited.

Further research has rewarded us in finding three decisions of other courts, not cited by counsel, where this rule was applied on concrete cases almost, if not quite, on all fours with the case at bar, and where want of evidence showing negligence was relied on. We refer to *Trenton Passenger Railway Co.* v. *Cooper*, 60 N. J. L. 219, 37 Atl. 730, 38 L. R. A. 637, 3 Am. Neg. Rep. 55; *Clarke* v. *Nassau Electric Ry. Co.*, 75 N. Y. St. Rep. 539, 6 Am. Electrical Cases, 234, and *Wood* v. *Wilmington City Railway Co.*, (Del. 1905) 64 Atl. 246. All these cases are cited with approval as the basis for his text, in 2 Joyce on Electric Law, (2nd ed.) section 602. The language of that text is: "Where a horse being driven upon the public street is injured by contact with the rails of an electric street railway, such fact is presumptive proof of negligence by the company in the operation of its road." The one point of the syllabus in *Clarke* v. *Nassau Electric Ry. Co.*, *supra*, is: "The facts that a horse stepped on the rail of a trolley road and immediately fell to the ground in a dying condition, also that its driver, touching the hames, received a severe shock, held, to be prima facie proof of defective insulation and so of negligence on the part of the railway company." And pertinent to the evidence of defendant's expert witness in this case, the court said of like evidence in that case: "It is true, the expert testimony indicated that such an accident could not occur unless,

through the defective insulation of the overhead wires, some portion of the positive current was withdrawn therefrom and found its way into the ground or other surface upon which the animal was stepping at the time he also came into contact with the negative rail; but the very accident itself tended to show that such defective insulation existed or some other condition which would produce the same effect." And as to the application of the rule res ipsa loquitur the same court says: "The fact that the defendant brought electricity into the street for use as a motive power and the fact that electricity so employed was capable of escaping in such a way as to produce the casualty which actually took place were sufficient, taken together, to justify the inference that the accident was due to the agency of the defendant, in the absence of proof that it was otherwise caused. The maxim *res ipsa loquitur* is directly applicable. *Scott* v. *London & St. Katherine Docks Co.*, 3 Hurlst. & Colt. 596; *Kearney* v. *London, Brighton, etc. Ry. Co.*, L. R. 5 Q. B., 411; S. C. 6 *id.* 759. The learned counsel for the respondent in his brief apparently assumes that this doctrine cannot be invoked unless the facts are such as to exclude every hypothesis but that of the defendant's negligence, and argues that the railroad in Thirty-ninth street might have been in perfect order and that the accident might have been occasioned by the carelessness of third persons engaged in stringing telegraph or telephone or electric light wires. But the rule is one which relates merely to negligence prima facie, and it is available without excluding all other possibilities."

But it is suggested that a proper case is presented here for the application of the rule that where the injury sustained may have resulted from one of two causes, equally plausible, and for one of which defendant is liable and for the other not, the burden is on the plaintiff to show that the injuries resulted from the negligence of the defendant, and were not the result of the other agency for which defendant was not responsible. If any force be given to the positive evidence of the witnesses as to the manner of the horse's fall and the electrical phenomena occurring on the rail at that instant, we cannot say that the theory of the defendant that the horse stumbled naturally and not from anything due to defendant's

negligence, causing the injury, is equally plausible with the theory of plaintiff that the injuries were due to the negligence of defendant. Wherefore, a case is not presented for the application of the rule invoked.

Another point suggested is that if the track was defective as charged, and as the evidence of plaintiff tends to prove, resulting in the injuries complained of, there was no evidence showing knowledge thereof on the part of defendant and imputing negligence. The evidence shows or tends to show that the track in question had been laid for several years, and that there had been no real tests made of the condition of the rails at the point of the injuries since they were laid; that instruments are made, and methods are well known for making such tests, but had not been used or employed by defendant company in testing the rails assumed to have done the injury in this case.

For the foregoing reasons we are of opinion to affirm the judgment.

*Affirmed.*