# CHARLESTON. ·

CULP, ADMINISTRATRIX v. THE VIRGINIAN RAILWAY CO.

Submitted September 28, 1915.   Decided November 9, 1915.

1. MASTER AND SERVANT—*Death of Railroad Employee—Negligence—Pleading and Proof.*
    Where the declaration in an action against a railway company for death by wrongful act, properly construed, contains a general charge of negligence, and also a charge of negligence in the violation of a particular rule of the company in the operation of its trains, and right of recovery is not thereby limited solely to negligent infraction of such rule, such declaration is not bad on demurrer for failure to negative certain exceptions contained in such rule.   (p. 127).

77 W. Va.

2. SAME—*Injury to Railroad Employee—Contributory Negligence—Evidence.*

Where in such action defendant relies on the supposed negligence and contributory negligence of an injured employee to defeat or reduce the amount of any recovery under the Federal Employers'. Liability Act, it should not be limited in its proof to its printed rules, but may properly give in evidence special instructions to such injured employee as to other well known rules, practices and customs promulgated by it to govern its employees in the safe operation of its trains. (p. 129).

3. EVIDENCE—*Mortality Tables.*

Where the death of such injured employee· is the basis of the action, any standard table of mortality reasonably authenticated, covering the class of persons to which deceased belonged, is admissible in evidence on the question of the quantum of damages recoverable. (p. 132).

4. SAME.

Such mortality table is not incompetent evidence because the injured employee, a freight train conductor, was not, when so employed, insurable in some particular insurance company. (p. 133).

5. TRIAL—*Injury to Servant—Negligence—Instruction—Assumption of Fact.*

In such action based on alleged negligence of defendant under the Federal Employers' Liability Act, an instruction to the jury proposed by plaintiff should be so drawn as not to assume as proven the fact of negligence, the burden of proving which rests upon him. (p. 133).

6. DEATH OF EMPLOYEE—*Instructions—Pecuniary Loss.*

Recovery by the administrator of a deceased employee under the Federal Employers' Liability Act, for the benefit of those preferred thereby, being limited by that act to the pecuniary loss sustained, instructions to the jury based thereon, to avoid error, should be clearly limited to such pecuniary loss. (p. 135).

7. TRIAL—*Instructions—Evidence.*

Where the evidence before the jury is not sufficient to support the affirmative issue of negligence, the jury may properly be so instructed, and to find for defendant. (p. 137).

8. MASTER AND SERVANT—*Injury to Servant—Instructions—Rules of Railroad Company.*

Where in such cases defendant's instructions to the jury are based on supposed violation by a conductor of rules promulgated to insure the safe operation of its trains by him, they should be so construed as not to require impossibilities of such conductor, but so as to permit performance by him of all other duties imposed, without incurring the liability of negligence or contributory negligence, in

case of personal injuries sustained by reason of the negligence of the defendant, or of its other employees.  (p. 140).

Error to Circuit Court, Mercer County.

Action by Abbie Culp, administratrix, etc., against the Virginian Railway Company.  Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial awarded.*

*McNutt, Ellett & McNutt, Sanders, Crockett & Kee, Brown Jackson & Knight* and *G. A. Wingfield,* for plaintiff in error.

*W. L. Welborn* and *J. G. Challice,* for defendant in error.

MILLER, JUDGE:

In an action founded on the act of Congress relating to the liability of common carriers by railway to their employees in certain cases, plaintiff, as personal representative, obtained a verdict and judgment against defendant for thirteen thousand dollars, damages for the death of her husband by the alleged wrongful act of defendant, to which judgment defendant sued out of this court the present writ of error.

In the court below the demurrer to the declaration was applied to all three counts thereof, but recovery was limited by the proof and instructions given to the jury to the first and second counts only.  The first point of error relied on is that the court below erroneously overruled defendant's demurrer to the second count.  The first count was predicated on the alleged negligence of the defendant, its officers, agents, and employees in violating rule number 99, of the defendant company, promulgated for guidance in the safe operation of its trains, and relating to the duties of the flagman when a train is delayed or stopped under circumstances endangering its safety and requiring him to go back immediately with stop signals, etc., a sufficient distance to insure full protection. The second count is predicated on a like alleged violation of defendant's rule number 91.  This count alleges that plaintiff's decedent was at the time of his death conductor on defendant's extra freight train No. 455, followed by extra freight train No. 500, in charge of another crew, and that it then and there became and was the duty of defendant to

use ordinary care and caution that the deceased might not be injured or exposed to unnecessary dangers while so engaged in defendant's service, but that in disregard of this duty and while deceased was so employed and engaged at Hotchkiss, a station on defendant's railway and where his train was required to stop for that purpose, in shifting and arranging coal cars on the side track, for a coal company at that point, and while his train was so standing on the main track, engaged in that work, and deceased was in the caboose of his train in the performance of his duties and without negligence on his part, the defendant, its officers, agents, and employees negligently, carelessly and wrongfully caused, permitted and allowed another train of defendant to collide with the rear end of the train and caboose occupied by decedent, killing him, and which collision it is further alleged was due to the failure of defendant, its agents and employees in charge of the colliding train, ''to use ordinary care and caution to keep ten minutes behind said train, leaving Mabin as is required by the rules of the said defendant and particularly its said rule No. 91, which requires trains in the same direction to keep at least ten minutes apart, except in closing up at stations, unless some form of block signals are used''; and a further charge is that defendant, its officers, agents, and employees in charge of the colliding train knew, or by the exercise of ordinary care and caution could have known, that unless they used ordinary care and caution in leaving Mabin to keep ten minutes behind decedent's train, as required by the rules of defendant, and particularly its said rule number 91, that train would collide with his; but that ''wholly disregarding its and their several duties as aforesaid, negligently, carelessly, and wrongfully failed to obey said rules of the defendant, and particularly its said rule No. 91, and left Mabin within less than ten minutes after the departure of said train on which plaintiff's decedent was employed'', and thereby causing the collision, and the injuries to said decedent and from which he died. And finally it is averred that the act of defendant in so operating said train in leaving the station Mabin as aforesaid, without warning to plaintiff's decedent of the dangers aforesaid, was the proximate cause of the collision aforesaid and the injuries to

and death of plaintiff's decedent. The only complaint of this second count is that it fails to negative the provisions of said rule number 91, that no form of block signals were used, and that the omission to run the trains ten minutes apart was not "in closing up at stations."

If right of recovery under this count had been predicated *solely* on the ground of the violation of rule number 91, we think proper pleading would have required a negativing of those exceptions in the rule, upon the principle enunciated in *Hawker* v. *B. & O. R. R. Co.*, 15 W. Va. 628. But we do not interpret this count as limiting right of recovery *solely* upon a violation of that rule. It in effect avers the violation of other rules of the defendant, not particularly pleaded, requiring its trains to be run ten minutes apart, or so as not to do injury to those employed thereon in operating the same. And while it must be admitted that this count is not as carefully drawn as it should have been, interpreted as a whole, we think it sufficiently avers a general charge of negligence in operating the colliding train, to admit evidence of the fact of actual negligence in respect thereto, rendering the defendant liable for the death of decedent. This upon the principle enunciated in *Hanley, Admr.* v. *W. Va. C. & P. Ry. Co.*, 59 W. Va. 419.

The next point which we will consider is the rejection of the evidence of certain witnesses offered by the defendant. The defense was, "not guilty", or want of negligence on the part of the defendant, and if there was any negligence resulting in the injuries and death of decedent, it was the negligence of the decedent himself in failing to perform the duties imposed upon him by the printed and instructed rules, promulgated by the defendant company.

In support of this defense defendant was permitted to introduce in evidence certain of its printed rules, applicable to conductors operating freight trains, as follows: "Rule 105. Both conductors and enginemen are responsible for the safety of their trains, and under conditions not provided for by the rules, must take every precaution for their own protection." "Rule 106. In all cases of doubt or uncertainty, the safe course must be taken and no risks run." And under the head "Instructions to Conductors", the following: "Rule

451. Enforce the rules applicable to all other employes on the train, reporting any insubordination, misconduct, or neglect of duty." "Rule 452. Invariably require flagman to act with the utmost promptness, in strict accordance with the rules, and never entrust such responsible duties to an inexperienced man, except in case of absolute necessity, when he must be given the fullest instructions which the nature of the emergency will permit." "Rule 457. When assigned to a train, take entire charge of it, and all persons employed thereon until it is finally set off from the main track at the terminal station."

In addition to these rules the defendant was also permitted to prove and introduce in evidence the following paper, signed by the deceased, H. C. Culp, conductor, at the time of his employment: "THE VIRGINIAN RAILWAY: I have a proper understanding of the operating rules of the Virginian Railway Company, as contained in the book of rules *and instructed by the Train Rules Examiner."* We have italicized the important words of this paper. By the evidence rejected defendant proposed to prove by the witness A. T. Woodruff, the train rules examiner, who examined deceased at the time of his employment, that he particularly instructed him as to a rule of the company, that when stopping his train, and the flagman failed to go back and flag the train for any purpose, it then and there became his duty as conductor in charge to do the flagging personally. That in addressing Culp and in endeavoring to impress him with his responsibility for his train, he said: "I am talking to you, Mr. Culp, that one of your most important duties—the most important duties that you have. That is what you are there for on the train, is to see that that train is protected. It is your duty as conductor to see that." And defendant proposed also to prove by this witness that it was one of the rules, customs, and practices of the company, when a train stops for any purpose and the flagman fails or refuses to flag the train, that the conductor must flag it himself, and that these rules of the company were in force when the injuries and death of decedent occurred. It was also proposed to prove these rules, customs, and practices by other trainmen and conductors:

but the court, as we think erroneously, rejected all this evidence.

Upon the first count right of recovery was predicated upon the theory of negligence by the rear brakeman on the deceased's train, in failing to go back, pursuant to printed rule number 99, above referred to, and to flag the train which collided with his train, and that this negligence of the flagman was the negligence of a fellow servant, imputable under the Federal Employers' Liability Act to the defendant company. So one of the important and decisive questions before the jury under this count was, was anyone negligent, and if so, to whom was that negligence imputable? As we have observed, the theory of the defendant, under the rules, was, that it was the duty of the conductor, Culp, either to flag the rear train himself, or to see that that duty was actually performed by the brakeman deputized by him for that purpose. It is conceded that "flagman" is not specifically defined by any rule or custom of the company, but it is contended by the defendant that it means, under the printed and instructed rules, the conductor in the first instance, or some one deputized by him, and for whom and whose neglect he is responsible. If admissible, therefore, the rejected evidence was important to the defendant and should have been received. This evidence would have supplemented the printed rules, and those rules referred to in the paper signed by the conductor Culp, instructed by the train rules examiner.

We have for decision then the question, was this proposed oral evidence of the witnesses competent and proper to go to the jury in connection with the printed rules? Of course such evidence would not be competent to vary or contradict the printed rules, for this is not allowed on well recognized principles of construction. The law as stated in Labatt on Master & Servant, (2nd ed.), 2998, seems to be well supported by the decisions cited, and is as follows: "The fact that a rule was not printed will not absolve the servant from the consequences of disobeying it, if it was one which was well recognized, and was duly promulgated by word of mouth. The object of writing or printing rules is merely that the proper course of conduct may be definitely prescribed, and more certainly brought to the attention of every person hav-

ing to enforce or execute the rules, or to rely on their execution." The instructed rule, practice or custom which the defendant proposed to prove by the testimony rejected was not inconsistent with or contrary to any of the printed rules, but in entire harmony with those rules. Our conclusion is that the evidence rejected was proper to go to the jury, and that the court erred in so rejecting it, and that its rejection may have been prejudicial to the defendant.

The next point of error is that the court erred in admitting in evidence the testimony of the witness H. D. Karnes, an insurance agent, and in connection therewith, a certain mortality table of the Mutual Benefit Life Insurance Company. Two points are made against this evidence, first, that the witness was not an expert, and was unable to swear that the mortality table offered in evidence was a standard table of mortality, properly admissible in evidence, and second, that it was not shown that the deceased belonged to the class of persons from which said table was made. In our opinion the point of error lacks merit. This table was offered of course to show the life expectancy of the deceased as to aid the jury in arriving at the amount of damages. While the authorities say such tables are not conclusive evidence, they are nevertheless the best evidence that can be procured on the subject, and are proper to go to the jury in cases of this character in aid of their verdict on the quantum of damages. The evidence of the witness Karnes tends to show that the table offered was what is called the American Experience Table of Mortality, as used by all insurance companies, and the same that was in use by the Mutual Benefit Life Insurance Company, of which he was agent. Defendant's counsel do not deny that standard tables of mortality are proper evidence in such cases. That this table may not have been more distinctly shown to be one of the standard tables, we think it is nevertheless admissible, any lack of full proof on the question going to its probative value, which the jury would consider, rather than to its total inadmissibility. In 17 Cyc. 422, cited, it is said: "On this principle also mortality and annuity tables which are standards on the subject of which they treat are admissible as evidence to show the expectancy of human life. They may be received without any proof of their

authenticity and correctness, the courts taking, it is said, judicial notice of their genuineness and authoritativeness. To be admissible under this rule the book containing the tables must be of standard authority. The rule has been applied to the Carlisle tables, the American tables, and the Northampton tables.''

Another point is, that deceased, being a freight train conductor, was not shown to be of that class whose lives were tabulated in the table offered in evidence. We do not think that because deceased was then employed in a dangerous occupation he was not of the class of persons covered by the mortality table. His age, as proven, was thirty-nine years, and his life expectancy, according to the table offered in evidence, was twenty-eight and nine-tenths years. It cannot be assumed that the deceased would always remain in his hazardous employment, and be denied insurance on that ground. He was privileged at any time to quit his employment and to take other employment equally as remunerative, or to be promoted to the position of a passenger conductor, when, according to the evidence, he would be then insurable in the witness' insurance company. So on neither of the two grounds of objection do we think the court erred in admitting the evidence. In *Ward* v. *Dampskibsselskabet Kjoebenhavn,* 144 Fed. 524, it was held, second point of the syllabus: ''In an action for wrongful death, the Carlisle Mortality Tables or other similar tables are admissible on the question of the expectancy of life of the deceased, when the precedent proof has brought him within the class of selected lives tabulated, although they are not conclusive.'' In this case the findings of fact and the legal conclusions of the commissioner as reported were confirmed by the court, and in which report the authorities on the subject of the admissibility of mortality tables are collated and commented upon. Besides all this many decisions, including our case of *Abell* v. *Penn Mutual Life Insurance Co.,* 18 W. Va. 400, hold that the court may take judicial notice of the contents of standard mortality tables.

Next, we will dispose of the points of error made upon the giving and refusing of instructions, and first, as to plaintiff's instructions. Instruction number 1, complained of, was in-

tended to define contributory negligence, the effect of contributory negligence under the act of Congress, and to state the rule respecting the burden of proof where the defendant relies upon contributory negligence; but in doing so we think the court erred in the particulars complained of, namely, in assuming as a fact proven that plaintiff, as under this act she was required to do, had proven the negligence of defendant. In this case negligence was denied, and was a question of fact for the jury, and one that could not be assumed; and it is not the law as this instruction told the jury that the burden of proving contributory negligence rested upon the defendant, where, as in this case, the evidence of the plaintiff proves or tends to prove contributory negligence. It is unnecessary for us to further consider the details of this instruction; it is enough to say for the purposes of another trial, that these questions of fact should not be assumed, but clearly submitted to the jury by instructions which are not misleading and liable to lead the jury to wrong conclusions.

Two objections are opposed to the plaintiff's instruction number 2, given. First, that it is based in part upon the annuity table, which it is claimed was improperly admitted in evidence; and second, that it totally disregards the effect of the supposed contributory negligence of the deceased. As we have concluded the annuity table was properly admitted we must hold that the first ground of objection is without merit. The second, which really ought to have been first stated, as it relates to the first part of the instruction, we think is well founded. It told the jury in effect that if they found for plaintiff they might fix her damages at such an amount, not exceeding the amount sued for, as she had sustained. This is not the law under the Federal Employers' Liability Act, where there is contributory negligence upon the part of the injured employee. If there is contributory negligence, the amount to which he or his beneficiaries in case of his death are entitled to recover, is the amount of such loss less a proportionate amount which should be deducted for such contributory negligence.

Plaintiff's instruction number 3 told the jury "that the law of fellow-servantcy does not apply in this case, and therefore the acts or negligence of a fellow servant of the plaintiff's

decedent cannot defeat the plaintiff's action in the case.'' This instruction is somewhat abstract and the latter part of it is rather an assumption of the controverted fact of negligence by the defendant entitling the plaintiff to a recovery, and may have misled the jury. An ·instruction in this form was given in *Easter* v. *Virginian Railway Co.*, 76 W. Va. 383, 86 S. E. 37, and while criticised as abstract and otherwise objectionable, was not regarded as so misleading and erroneous as to call for reversal. Instructions should not be so drawn. Moreover, this instruction is rather an assumption that the brakeman Hull, as a supposed fellow servant of deceased, was guilty of negligence, a controverted fact, and one which should also have been submitted to the jury without any assumption that that fact was established.

The only meritorious objection to plaintiff's instruction number 4, which strikes us, is, that it does not limit the damages to the pecuniary loss which the plaintiff and her children may have sustained by the death of her decedent. The Federal Employers' Liability Act so limits any recovery. Damages for pain or suffering, or any other loss or damage not pecuniary, die with the injured employee.

The legal propositions relied upon by counsel as supporting their objections to the plaintiff's instructions, and which so far as applicable sustain our conclusions in respect thereto, are as follows: ''(1) In order to entitle the plaintiff to recover the negligence of the defendant must be the proximate cause of the accident. *S. A. L. Ry. Co.* v. ·*Horton*, 233 U. S. 492; *Grand Trunk W. R. Co.* v. *Lindsay*, 233 U. S. 42. (2) An instruction should not be given without evidence bearing on the facts on which it rests, and whether there is such evidence the court must say. *Rowan & Co.* v. *Hull*, 55 W. Va. 335. (3) The burden of proving contributory negligence does not rest on the defendant where such evidence is disclosed by the evidence of the plaintiff, or may be fairly inferred from all the circumstances. *Barrickman* v. *Marion Oil Co.*, 45 W. Va. 652; *Dimmey* v. *Railroad Co.*, 27 W. Va. 46, 47. (4) There can be no recovery under the Federal Employers' Liability Act, unless the plaintiff's intestate, as well as the defendant, were both engaged in interstate commerce at the time of the accident. *Pedersen* v. *D., L. & W. R.*

*R. Co.*, 229 U. S. 146; *North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248; *Ill. Cent. R. Co.* v. *Behrens,* 233 U. S. 473. (5) It is error to give an instruction in which there is no reference to the evidence in the case. *State* v. *Sheppard,* 49 W. Va. 582. (6) Where the facts are undisputed, the existence or non-existence of contributory negligence is a question of law for the court, and the court cannot properly, even under instructions, leave that question to the jury. *Slaughter* v. *City of Huntington,* 64 W. Va. 237; *Shriver* v. *County Court of Marion County,* 66 W. Va. 685. (7) When contributory negligence is relied on, an instruction directing a verdict in favor of the plaintiff which omits any reference to the facts tending to establish contributory negligence, and entirely ignores such defense, is erroneous, and such error is not cured by other instructions submitting such defense to the jury. *McCreery's Admx.* v. *Ohio River R. R. Co.*, 43 W. Va. 110; *McVey* v. *St. Clair Co.*, 49 W. Va. 412; *Claiborne* v. *C. & O. Ry. Co.*, 46 W. Va. 363; *Diddle* v. *Continental Casualty Co.*, 65 W. Va. 170; Federal Employers' Liability Act, sec. 3, 35 U. S. Stat. L., Chapt. 149. (8) It is error to give conflicting instructions. *Ward* v. *Ward,* 47 W. Va. 766; *McKelvey* v. *C. & O. Ry. Co.*, 35 W. Va. 500. (9) It is error to give confused and misleading instructions. *Claiborne* v. *C. & O. Ry. Co., supra; Overby* v. *C. & O. Ry. Co.*, 37 W. Va. 524. (10) Instructions announcing a mere abstract proposition of law should not be given. *Sheppard, Admr.* v. *Peabody Ins. Co.*, 21 W. Va. 368. (11) The plaintiff can only recover on the case charged in the declaration, and cannot bring the defendant into court to answer one charge, and then ask for a recovery at the hands of the jury on another charge. The verdict of the jury, as well as the instructions, must be based upon the pleadings in the case, as well as on the evidence. *Forney* v. *Ferrell,* 4 W. Va. 729; *Burr* v. *Brown,* 5 W. Va. 241; *Henry* v. *Davis,* 7 W. Va. 715; *Barber* v. *F. & M. Ins. Co.*, 16 W. Va. 658. (12) Instructions must be based upon the evidence in the case. *Woodell* v. *W. Va. Improvement Co.*, 38 W. Va. 23. (13) The damages which may be recovered under the Federal Employers' Liability Act are limited to the financial benefits which might reasonably be expected from the defendant in a pecuniary way. *Michigan Cent. Ry. Co.*

v. *Vreeland*, 227 U. S. 59.    (14)    Where the rules of a Railway Company require the conductor to see that the brakeman acts promptly when his train is stopped, and the conductor fails to see that the train is flagged, he is guilty of contributory negligence which would bar his recovery at common law, and which, under the Federal Employers' Liability Act reduces the amount of his recovery.  *International & G. N. R. Co.* v. *Culpepper*, 46 S. W. 922.    (15)    Where the negligence which causes the accident is partly attributable to the defendant and partly attributable to plaintiff's intestate, plaintiff cannot recover full damages, but only a proportionate amount bearing the same relation to the full amount as the negligence attributable to the defendant bears to the entire negligence attributable to both.  *S. A. L. Ry. Co.* v. *Tilghman*, 35 Sup. Ct. Rep. 653. .(16)    An instruction which wholly ignores the question of contributory negligence, and the duty of the jury to consider, under the Employers' Liability Act, a diminution of damages therefor, is reversible error.  *Hall* v. *Vandalia·&c. R. Co.*, 169 Ill. App. 12; Roberts on Injuries to Interstate Employees on Railroads, 171-2.''

Now with respect to defendant's instructions rejected.  Of the nineteen instructions requested, the court gave numbers 11, 12, 14, 15, and 18, and rejected all the others.  Instruction number 1, would have told the jury that the evidence in this case was not sufficient to find a verdict against the defendant, and therefore instructs the jury to find a verdict for the defendant.  Whether this instruction should have been given depends of course upon the state of the evidence on the facts of negligence, pleaded in the first and second counts, to which we have already alluded.  As adduced on the trial below, we find no affirmative evidence supporting the fact of negligence charged in operating the colliding train within less than ten minutes behind the train on which decedent was killed.  There is evidence tending to show that the colliding train left the siding at Mabin within the ten minute limitation prescribed by rule number 91. but the evidence seems quite clear that there was no causal connection between that violation of the rule and the injuries and death of decedent, for the evidence seems quite clear, and there is nothing in the testimony of the witnesses nor in the facts and circumstances surrounding

the collision, which tend in any appreciable degree to overcome the positive evidence, that when the forward train, on which decedent was employed, arrived at Hotchkiss it was from ten to fifteen minutes ahead of the colliding train following it. Upon this evidence we do not see how there could be a recovery, based upon the act or acts of negligence alleged in the second count. The questions which we must ask, and the answers which we must make thereto, in coming to a conclusion, are, was rule number 91 violated by the colliding train on leaving Mabin? answer, yes; was there any causal connection between that violation of the colliding train and the injuries and death of the decedent? answer, the evidence shows none; was there any negligence shown in operating this colliding train, in violation of any rule as to time of running, causing the injury complained of? answer, we find no proof thereof in the record. The evidence is that when the collision took place the trains were closing up at Hotchkiss, and then no particular rule as to the time between the running of the trains was made applicable. No other act of negligence in this particular is alleged or proven.

Such being the proof on the acts of negligence alleged in the second count, right of recovery, if any, must stand alone upon the pleadings and proofs under the first count. That count as we have seen predicates right of recovery on the supposed negligence of the brakeman Hull, designated by the plaintiff as "flagman", to go back immediately with stop signals, a sufficient distance, to insure protection, in compliance with said rule number 99. That no such signals were given is fully established by proof, but whether brakeman Hull was negligent therein, and his negligence imputable to the defendant, under the Federal Employers' Liability Act, is a controverted fact, as to which there is no positive evidence, and we are obliged to solve the question by reference to the facts and circumstances surrounding the accident, as shown in evidence, immediately before and immediately after the collision, and in the light of the rules of the company governing the conductor and the flagman. This evidence shows that immediately after the collision the dead body of brakeman Hull was found under the high bridge, and almost immediately under the place where the caboose of the forward

train stood when that train stopped, and where it stood at the time of the collision. There were no marks of violence on his body except such as would naturally have been sustained by the fall from the bridge; nor were there any evidences on the caboose or on the track, or on the colliding engine, so far as the evidence shows, showing that Hull had been struck by the engine while standing on the caboose or while walking on the bridge. But the evidence shows that the caboose on which the decedent Culp was found was by force of the colliding train driven forward a hundred feet or more from the point on the bridge under which the body of Hull was found, and that he was in the caboose, apparently sitting down and when he sustained the injuries resulting in his death. From these facts it is contended for plaintiff that the jury had the right to infer negligence on the part of the defendant. On the other hand, defendant insists, assuming that the brakeman Hull was an independent agent of the company, at least in respect to his supposed duties as flagman, that it is just as fair, indeed more proper, to assume, that when brakeman Hull fell from the bridge, he fell accidentally, when leaving the caboose in the act of going back to perform his duties as flagman, as that he was killed by the collision before he had started on his journey, in which event there would be no negligence imputable to defendant. And it is furthermore contended on behalf of the defendant, on the theory that Hull was negligent in the performance of his duties, that he must have been on the caboose in plain view of conductor Culp, with the knowledge of Culp, and that under the rules printed and instructed it was the bounden duty of the conductor, consistently with his other duties, to enforce the rule with respect to flagging the oncoming train, either by requiring Hull, the brakeman, if competent, or some other person, to perform that duty, and that any negligence therein, if any, would be the negligence of Culp alone, and not of the defendant company, so as to render it in any way liable for his injuries and death.

As we view the evidence these propositions of counsel are well founded in law and fact. If, as is fair to assume, Hull fell from the bridge accidentally in attempting to leave the caboose and go back and flag the colliding train, there was no

negligence imputable to defendant, rendering it liable for the injury and death of decedent. If Culp himself was negligent in the performance of the duties devolving upon him in respect to the colliding train, his negligence could not be imputed to the defendant as a basis for recovery in this action under the Federal Employers' Liability Act. The law in such cases is, that where there are two equally plausible theories deducible from the evidence, on one of which the defendant would be liable, on the other not, a case justifying recovery has not been presented, for the burden is upon the plaintiff to make out his case by a preponderance of the evidence, and there is no presumption of negligence from the fact of injury. *Norfolk & W. R. Co.* v. *Poole's Admr.,* 100 Va. 148; *Consumers' Brewing Co.* v. *Doyle's Admx.,* 102 Va. 399; *Peters* v. *Lynchburg, etc. Light Co.,* (Va.) 61 S. E. 745; *Smith* v. *Ill. Cent. R. Co.,* 200 Fed. 553, 555-6, and cases cited; *Hanley, Admr.* v. *W. Va., C. & P. Ry. Co., supra; May* v. *Charleston Interurban Ry. Co.,* 75 W. Va. 797, 84 S. E. 893; *Yeater* v. *Jennings Oil Co.,* 75 W. Va. 346, 84 S. E. 904. There is no right of action given by the Federal Employers' Liability Act for the death of an employee, unless such death is due to the negligence of the defendant, and as is said in *Smith* v. *Ill. Cent. R. Co., supra,* "it is not enough for plaintiff to show that defendant may have been guilty of negligence. The evidence must point to the fact that it was so negligent. And where the testimony leaves the question unanswered, and shows that any one of several things may have induced the accident, for one or more of which the defendant is responsible, and for others of which he is not, it is not permissible to speculate between the several causes and to find that the negligence of defendant was the real cause, in the absence of satisfactory foundation in the testimony for that conclusion." Citing, among other cases, *Patton* v. *Texas & Pacific Ry. Co.,* 179 U. S. 658. Our conclusion, therefore, is that, as the case was presented to the jury on the trial below, the burden of showing negligence was not sustained by the plaintiff, and that defendant's instruction number 1 should have been given.

With respect to defendant's instructions numbers 3, 4, 5, 6, 7, 13, and 19, rejected, presenting practically the same

question in different forms, the duty of defendant Culp, with respect to enforcing the printed and instructed rules of the company, and particularly the rule for flagging trains, were too general and sweeping in their terms.   While the rules referred to seem to require of the conductor rigid enforcement of the rules, and particularly those relating to the flagging of trains, so as to prevent collisions, these should receive a reasonable construction, and so as not to require impossible performance by the conductor.   We must assume that the conductor has other duties to perform, and the rules require performance of those duties also.   Of course his paramount duty would in all cases be the safety of his train; but he would necessarily in the performance of all his duties have to delegate some of them to other employees, and if perchance after having performed his duty one so deputized should neglect performance without fault of the conductor, and such negligence result in injury and death of the conductor that negligence might be imputable to the defendant company; but not so if there was any neglect or default upon the part of the conductor in the performance of his duties.   In failing to so limit these instructions we think defendant was not entitled to have them propounded to the jury as requested.

With respect to defendant's instruction number 10, rejected, as the case was presented to the jury we think it should have been given.   We have already concluded that no recovery could be had under the second count.   This instruction would have so told the jury, and it would have also told the jury that unless they found from the evidence that defendant was guilty of negligence, as charged in the first count, plaintiff was not entitled to recover.   So we think the instruction stated the law correctly as applicable to the case as presented by the evidence adduced on the trial.

Defendant's instruction number 16, we think, was too broad and sweeping, and for the same reasons given justifying the rejection of instructions numbers 3, and so forth, proposed by the defendant, it also was properly rejected.

From what has been said, and the conclusions reached respecting the other errors relied upon for reversal, it follows of course, that the court below erred in refusing to set aside the verdict and to award defendant a new trial.   We are of

opinion, therefore, to reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Reversed, and new trial awarded.*