## Case No. 9,028.

### The MANISTEE.

[7 Biss. 35.] [1]

Circuit Court, E. D. Wisconsin. Jan., 1874[2]

COLLISION — RUNNING IN A FOG — CONTRIBUTORY NEGLIGENCE—PAYMENT BY INSURER BEFORE FILING LIBEL.

1. When a steamer is running in a fog surrounded by sail vessels, and in close proximity to them, she ought to materially decrease her usual rate of speed. Seven miles an hour is entirely too fast under such circumstances.

[Cited in The Leland, 19 Fed. 775; Clare v. Providence & S. S. Co., 20 Fed. 536, 538.]

2. In a collision where a fault is charged against one vessel, in relation to which the testimony is doubtful, and it appears by undisputed testimony that the fault of another is flagrant, the latter only will be held responsible, and the doctrine of contributory negligence will not apply.

3. Where a libel is brought by the underwriters for the loss of a vessel, they having paid the loss and claiming to be subrogated to the rights of the insured it is not material whether or no the money has actually been paid by them before the filing of the libel, if it was the bona fide intention of the owner to abandon.

In admiralty.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]
[2] [Affirming Case No. 9,027.]

H. H. & G. C. Markham, for libellants.
Finches, Lynde & Miller, for claimant.

DRUMMOND, Circuit Judge. In this case I shall affirm the decree of the district court [Case No. 9,027]. The circumstances connected with the collision which gave rise to this case are briefly: That the propeller Manistee was coming across the lake on the morning of the 24th of May, 1872, bound for Milwaukee, and the schooner S. Robinson was bound down the lake. The morning was very foggy, with a light wind from the south and west. It was so foggy that a vessel could be seen but a short distance. The Robinson had her port tacks aboard and was going free on her course, one point east of north. The vessels did not see each other until they were so near that a collision was very difficult to avoid; at any rate it could not be avoided I think, by the schooner. Whether or not it might have been prevented by the propeller after the Robinson was seen admits perhaps of more question.

The district judge thought it could have been, but I do not think it is so clear. The propeller blew her whistle from time to time as she kept on her course. The evidence is quite satisfactory I think also that there was a horn blown on board the schooner. It is denied by those on board of the propeller that the proper blasts of the horn were heard, namely, three blasts of the horn, indicating what course the Robinson was on. There was a slight breeze, the schooner not going more than three or four miles an hour, three and a half, perhaps. What indicates how much the propeller is in fault is the fact that the fog was very thick; so thick that a vessel could be seen but a very short distance, perhaps not over one or two hundred feet. Although some of those on board of the propeller say it was not so, more of them say they saw the schooner a quarter of a mile. I doubt whether that is true. Of course, if it is true, the obligation on the part of the propeller to avoid the schooner was absolute. Now, admitting that they saw the schooner a quarter of a mile off, they necessarily admit that they were in fault by running afoul of her, and it would have the effect to relieve the schooner of all responsibility. But I think that they did not see the schooner a quarter of a mile off. The fog being so thick, and the inability to see vessels except when they came very close together, fog horns being heard from various vessels in the immediate vicinity, it was a flagrant fault for the steamer to keep on her course as she did without abating her speed and without checking it until the collision was probably unavoidable.

Now without laying down any absolute rule as to the speed at which a steamer should run in a fog on these lakes, there can be no question but that when a steamer is running in the fog, surrounded by sail vessels, as this steamer knew that she was, and in close proximity, that to run at the rate of speed that this propeller was running was a gross wrong, a great risk which she had no right to incur to the sailing vessels that were near.

I know what steamboat-men say; that they must make their time; that they must run in the fog. But they cannot be permitted to run with their usual speed in a fog, surrounded by sail vessels, against which they are liable to collide at any moment.

The district judge thought the speed of this propeller was seven miles an hour. I think perhaps that the weight of evidence is that she was running faster than that. But, suppose it was only seven miles an hour; it was too great a speed under the circumstances. They knowing, as they ought to have known, that they were surrounded by vessels, they should have checked up so as to have had only reasonable steerage-way upon the propeller.

Then as to the fault of the schooner: I cannot see that there was any fault on the part of the schooner that contributed to this collision. The weight of the evidence is that she kept her course, as she had a right to do. After seeing the propeller it was impossible to avoid a collision—impossible at any rate on the part of the schooner. If there was a fault then, there was no fault on the part of the schooner that contributed to the collision. And where there is charged a fault against a vessel, as there is in this case by the defense, in relation to which the testimony leaves it doubtful whether it exists or not, and it appears by the undisputed testimony that the fault of the propeller is flagrant, a court will not find the other party in fault upon doubtful evidence when it can lay its hand upon a flagrant wrong and say that that, at any rate, was mainly the cause of the injury sustained.

Now as to the blowing of the horns; the lookout; or the manner in which the schooner was steered: The testimony certainly is not satisfactory that there was a fault in any of those particulars, or any other, which contributed to the collision. Steamers must learn that they cannot rush through a fleet of sail vessels, on a public highway much frequented, in a dense fog, and in excuse say: "We must make our time; they must keep out of our way." They must not say that and expect if they sink a vessel as this propeller sunk this vessel, to escape paying for the loss. It is as clear a case as I have ever had before me. The schooner that was sunk was loaded with 16,000 bushels of corn, and it was lost. She was stove almost right through amidships, and the men on board had hardly time or opportunity to escape, and in fact they lost a large part of their effects, clothing, &c. The underwriters paid the loss on this corn, and they have come in and asked that they shall be repaid and subrogated for the owners in all their rights.

An objection is made to the libel. One of the underwriters paid for the loss which had been sustained a few days after the libel was

filed, and it is claimed that the rights of the parties must have been consummated at the time the libel was filed. The only question is whether, if there was an abandonment on the part of the owner of the corn to the underwriter, it was in such a way as to indicate that he intended to clothe the underwriter with all his rights. It is not material, I think, whether or not the money had been actually paid. And the proof is abundant, in this case, that it was the intention of the owner of the corn to abandon all his rights and interests to the company, and it within a few days paid the loss, thus removing all doubt upon the subject as to the intention of the parties. I decide the case therefore upon the ground that, the owner having made an absolute abandonment, under circumstances showing that he did not intend to make any claim for the corn in any way, that it was absolute; that it was not necessary in order to file a libel that the money should be actually paid. Of course, there need not have been an abandonment in the strict sense of the term here, because the thing abandoned was in the bottom of the lake and never recovered. And that illustrates the view which the court has taken; so that the libel, which is a libel by the underwriters, was properly sustained by the district court, and the decree will be affirmed.

The cross libel filed by the owners of the propeller for the damages sustained by it because of the collision, was properly dismissed by the district court, there being no cause for filing a libel against the Robinson or its owners. The district court seemed to think the schooner was seen a sufficient distance off to have avoided the collision if the proper precautions had been taken. I doubt that. I think the weight of the evidence is that the schooner loomed up all at once before the propeller so that neither could really have avoided the collision.

Decree for libellants.