# CHARLESTON.

## FRANK W. HELVEY V. PRINCETON POWER COMPANY.

### Submitted April 15, 1919.    Decided April 22, 1919.

1. TRIAL—*Demurrer to Evidence—Determination of Sufficiency of Evidence.*

   On demurrer to the evidence, if it be conflicting, judgment in favor of the demurree should be given unless the evidence, considered as a whole and in the light of the inferences properly deducible from it, plainly and decidedly preponderates in favor of the demurrant on some decisive point.    (p. 20).

2. STREET RAILROADS—*Public Crossings—Rights of Carriers and Public.*

   As between a street railway company and the public, the right of the one to the use of the streets at street crossings is equal, not superior, to that of the other, and ordinarily, as between the company and another having an equal right to be upon the crossing, the one that can most readily adjust himself to the exigencies of the situation must do so when necessary to avoid injury.    (p. 20).

3. RAILROADS—*Highway Crossings—Rights of Travelers and Carrier.*

   The recognized legal status and reciprocal duties, each towards the other, of an interurban railway company and a traveler on a rural highway at a public grade crossing are materially different from those prevailing in a municipality, the rights of the traveler ordinarily being subordinate to those of the company, in that to the latter is accorded priority of passage, the reciprocal rights and duties of the respective parties in such case being predicated upon that basis.    (p. 22).

4. SAME—*Highway Crossing Accidents—Contributory Negligence—Evidence—Sufficiency.*

   If the driver of an interurban electric car negligently failed to discover plaintiff's approach to a railroad crossing over a public highway, though the driver duly gave proper warning of the car's approach thereto, and otherwise performed such other duties as the law required at such crossings, and plaintiff also negligently failed to stop, look and listen for such car, although he knew one was then due, and the direction from which it would come, and although warned by another person similarly situated of the car's approach, there being no obstruction seriously affecting the view of the track, and by him requested not to enter upon the crossing because of the apparent danger of doing so, and although possessed of such knowledge and so warned plaintiff did drive his automobile

thereon, whereby it was injured, such negligence contributing thereto precludes the right to recover for the injury so sustained. (p. 24).

(RITZ, JUDGE, absent).

Error to Circuit Court, Mercer County.

Action by Frank W. Helvey against the Princeton Power Company. Judgment for plaintiff, and defendant brings error.

*Reversed and rendered.*

*H. E. DeJarnette,* for plaintiff in error.
*Sanders, Crocket & Kee,* for defendant in error.

LYNCH, JUDGE:

Plaintiff sued to recover for an injury done to an automobile then owned and driven by him due to an impact with it at a public crossing by a car propelled by electricity on an interurban railway owned and operated by defendant between Princeton and Bluefield in Mercer County. The point of departure of the automobile and car was Princeton, and their destination Bluefield on the morning the injury occurred, and they reached the intervening crossing and attempted to pass over it at the same time, though only the front part of the automobile was on the track when it was hit by the car. For a distance of more than a mile the public road and railroad were virtually parallel, and each within easy range of vision of the other as they approached the crossing, except that about 300 feet from the crossing the road turns sharply towards it.

Plaintiff began his journey before the time scheduled for the departure of the car and knew it had not passed over the crossing as he approached it. He did not see the car and the motorman did not see the automobile according to the testimony of each of them, while it was within the power of either to prevent the collision. Though at or near the crossing defendant, as appears from one of two photographs introduced in evidence, had placed the usual stop, look and listen warning post, plaintiff did not stop, but says he looked up the railway track when he drove the automobile around

the curve towards the crossing, and "did not see the street car but I kept on and kept looking for it." Yet on cross-examination he admitted that he did not look towards Princeton to determine whether he could cross the track without endangering the safety of himself, the passengers he was carrying, and his property. As a further justification of his failure to observe the approach of the car, he relies on a small structure, spoken of as "the dog house," though built by defendant and used for the temporary convenience of its passengers while awaiting the arrival of a car for transportation. Admittedly this obstruction was insignificant and affected the view only when the automobile was within a very short distance from the railway crossing. It did not in the least, nor apparently did any other stationary object, seriously affect the view of the track while the automobile covered the 300 feet between the point of curvature in the road and the crossing. The existence of such an object no testimony was offered to show, and the photographs do not reveal any except two leafless trees, the accident having occurred early in February; and if, as plaintiff says, the curtains of the automobile, drawn to protect himself and passengers from the cold morning air, contributed to the impairment of his view of the track, that fact was not within the control of defendant or due to any negligence on its part, nor for which it was responsible or could be made liable ordinarily, and not at all unless its agents knew or by the exercise of reasonable diligence could have seen that by reason thereof the situation was such as the law required defendant to make reasonable effort to avoid impending danger to life and property, having due regard also to the equal if not superior duty toward the passengers and property of the defendant itself. Though the curtains were drawn, they were glazed, as plaintiff himself proved, as he says also that he could see through them only indistinctly.

The negligence for which it is sought to make defendant respond in damages for the injury was its failure to see plaintiff's automobile as it approached and entered upon the crossing, and as an element thereof the rate of speed at which the car approached and passed the crossing, evidenced

by the momentum that enabled it to carry the automobile about forty feet beyond the point of impact. To rebut the charge so preferred, the facts proved in addition to those already stated are: That so far as disclosed by the evidence no one in the car saw the automobile until the instant of the impact; that the motorman sounded the whistle for the crossing or the station 40 or 50 feet beyond it; that when the conductor rang the stop signal for the station, the motorman responded by sounding the warning; and that when the collision occurred the speed of the car did not exceed ten miles an hour. Such is the testimony of the conductor, the motorman and Julius Hall, then a passenger on the car. There is some conflict as to the distance the signals were given as the car approached the crossing. But whatever may have been the distance, Joe Gollose, an Italian who was a passenger in plaintiff's automobile before and at the time of the injury, said, and no witness contradicts his statement, not even the plaintiff, that he saw the car coming and heard the signals and asked plaintiff to stop the automobile, and that he did not do it, but drove on until stopped by the collision. The excuse offered by the motorman for not seeing the automobile earlier was that he confined his observation to the track in order to keep a lookout for the approach of the car, not then in sight, but bound from Bluefield to Princeton, and for wagons, trucks and automobiles coming in the same general direction, that is, towards Princeton, because at that point both the railroad and highway curve sharply around a knoll towards which the car and automobile were approaching when interrupted by the collision.

By what principle then shall the rights of the parties be determined when the facts are tested either by a motion for a new trial, had there been an unconditional verdict for plaintiff, or by demurrer to plaintiff's evidence weighed and considered to the extent allowed by our decisions? There is little, if any, substantial difference between the two methods of testing the sufficiency of evidence to support a verdict. "If upon such evidence the finding of the jury plainly appears to be contrary to the evidence or without sufficient evidence or plainly against the decided and clear

preponderance of the evidence, it ought to be set aside, even though the evidence be conflicting." Pt. 5, Syl., *Johnson* v. *Burns*, 39 W. Va. 658; *Davidson* v. *Pittsburgh, etc. Ry. Co.*, 41 W. Va. 407; *Chapman* v. *Liverpool Salt Co.*, 57 W. Va. 395. Such is the rule adhered to in this state as applicable to motions to set aside verdicts when founded in the first instance upon an unjust and unreasonable interpretation of the evidence, or against the preponderance of the evidence considered in its entirety and in the light of the inferences logically and fairly deducible from it. There is no sanctity inhering in a verdict such as forbids an investigation to ascertain the convincing character or probative value of the facts underlying it.

Such an investigation is, however, peculiarly appropriate where either litigant seeks to test his adversary's evidence by the challenge of a demurrer, and in that event our statute, section 9, ch. 131, Code, as construed in *Barrett* v. *Raleigh Coal & Coke Co.*, 55 W. Va. 395, means that "on demurrer to evidence, if it be conflicting, judgment in favor of the demurree should be given unless the evidence plainly and decidedly preponderates in favor of the demurrant on some decisive point." *Miller* v. *Johnson*, 79 W. Va. 198. See also *Chafin* v. *N. & W. Ry. Co.*, 80 W. Va. 703. In other words the mode of challenge is not material, for in any event the question is whether the verdict returned for plaintiff, if conditional and subject to the opinion of the court upon the law of the case, or if not so conditional, is supported by proof sufficient to warrant a judgment based on it when considered in all of its aspects. Clearly if it is not so supported, such a verdict, if unqualified, cannot be permitted to stand, and if conditional, it cannot serve as the foundation of a judgment.

Tested by these principles, is the judgment for plaintiff warranted by the facts proved? This is not a case involving the rights, privileges and immunities of persons using street crossings of municipal corporations, as cities, towns and like populous communities, whether incorporated or not, where lines of railroad are operated on the surface of the street and receive and discharge passengers frequently at each

crossing, but a rural highway where the risks and dangers are less compared with such operations in the more congested areas. As between a street railway company and the public the right of the one to the use' of the streets at street crossings is equal, not superior, to that of the other. These reciprocal rights have their corresponding duties which the company and others lawfully using the streets cannot disregard with impunity, and the care to be observed by each is commensurate with the danger incident to such use, and ordinarily as between the company and another having an equal right to be upon the crossing the one that can most readily adjust himself to the exigencies of the situation must do so when necessary to avoid injury. *Ashley* v. *Kanawha Valley Traction Co.*, 60 W. Va. 306; *Riedel* v. *Wheeling Traction Co.*, 69 W. Va. 18.

Besides, interurban street car companies frequently construct their railroads upon rights of way acquired for such purpose, as probably defendant did for its railroad track, and, when possible to do so, avoid highways except where public crossings are unavoidable, and lawfully may operate their cars at a higher speed than is allowed in the streets of a municipality. These observations are not intended, however, to warrant the conclusion or the inference that the operator under such circumstances owes no duty to exercise ordinary prudence to avert injury to persons or property at a rural highway crossing. While the law exacts diligence, nevertheless the degree is always commensurate with the danger to be avoided. The duty of a railroad company, through its agents and employes, to safeguard persons lawfully upon and using public highways against injury at railroad crossings differs only in degree from that owed to trespassers and licensees using other parts of the railroad right of way. 11 Michie's Enc. Dig. Va. & W. Va. Rep., 570, 571, 581; 4 idem, 128, et seq.

But there are corresponding duties to be observed by a traveler over highways to use common or ordinary prudence, care and caution to protect himself and property from injury at such crossing. He disregards this imperative duty whenever he enters upon it in such a manner and at such

a time and in such circumstances as would deter a reasonably prudent person possessed of the usual faculties of sight and hearing form so doing. Railroad tracks bespeak and warn of danger, and no one can recklessly enter upon them, but is bound to listen and also to keep an outlook in each direction for approaching trains. *Beyel* v. *Newport News etc. R. Co.*, 34 W. Va. 538; *Berkeley* v. *C. & O. R. Co.*, 43 W. Va. 11; *Ashley* v. *Traction Co.*, cited; *Riedel* v. *Wheeling Traction Co.*, 69 W. Va. 18.

The recognized legal status and reciprocal duties each towards the other of an interurban street car company and a traveler on a rural highway at a public grade crossing are materially different from those prevailing in a city. The rights and duties of the former bear a marked resemblance or similarity to the rights and duties of the operator of a steam railroad, as to which the rights of a traveler on a highway at railroad grade are subordinate, (2 Shear. & Red. Neg. (6th Ed.) § 463), and differ in this respect from those of a street railway company at a street crossing. After defining the duties and liabilities of street car companies when confined to streets of a municipality, Booth on Street Railways (2d Ed.) § 458, says: "In the country districts, however, because the modern interurban cars run at a high speed and stop only at designated stations, a higher degree of care is required of a traveler when attempting to cross in front of an approaching car." Says the Supreme Court of Maryland in *McNab* v. *United Rys. Co.*, 94 Md. 719: "It is not because of the difference in the motive power employed upon a steam and an electric railway, but because of other circumstances, that acts which would be regarded as acts of contributory negligence in the one instance would not be so treated in the other. It is far more dangerous to attempt to cross in advance of a car moving at a high rate of speed, whether propelled by steam or electricity, than to make a like attempt when the car is moving along the streets of a city at a very moderate rate of speed. The difference in the methods of the construction of the tracks in the country from that in the city; the very marked difference of speed attained in the one locality from that tolerated in the other; the

adaptation of the city streets to the uses of pedestrians and vehicles of all kinds, as well as to the cars, are all circumstances wholly apart from what the motive power propelling the cars may be, which must be considered in determining whether a given act is or is not an act of contributory negligence." The same demarkation is noted in the Ashley Case cited between street crossings and intermediate points. The duty of street car companies, it is said, in the opinion, is greater at such intersections than it is between them.

Is this case within and governed by the principles enunciated in *Riedel* v. *Wheeling Traction Co.,* 69 W. Va. 18, as plaintiff contends? There are manifest differences between the facts of the two cases. The accident to Mrs. Riedel in the latter case occurred at a street crossing in McMechen. When the car struck her she was almost across the railroad track with her back toward the approaching car and would have escaped the impact in another instant, or according to the opinion, "in a fractional part of a second." She did not see the car though its approach was within the range of her vision. Nor did the motorman see her, though he could have done so for his car was going from fifteen to twenty miles an hour and she was then on the track immediately before him, and witnesses who saw the accident and knew the circumstances testified as to his ability to observe the extremely perilous situation in which plaintiff, unconcious of the impending danger, had placed herself, but that instead of exercising prudence in that respect he needlessly looked in a different direction, and not in front of him as he should have done. Besides, he did not sound the alarm and made no effort to stop or check the speed of the car until after the accident. The case presents a state of facts in some respects similar to but in others quite different from the facts now before us in this case. Granting that defendant's motorman could have seen the automobile moving towards the crossing at a speed not to exceed five miles an hour, as plaintiff says, as and when and after it rounded the curve in the road, and thereafter proceeding at right angles with the railroad track and in full view of it for a distance of 300 feet, what would any reasonably prudent man driving an

automobile do if he were placed in a like or similar situation, or what would a man of reasonable prudence placed in the situation of the motorman presume the driver would do in such circumstances? For after all is said, the law is only the dictates of common sense. The common or usual experience of men of reasonable judgment is a safe criterion by which to gauge conduct.

Would not a sound discretion require a person apprehensive of danger to stop, look and listen before entering into such a place where he might seriously be injured, as where he had every reason to believe that a car was likely to pass along a railroad crossing before an automobile driven by him towards the track with the intention of crossing it could pass over it, especially so when he is admonished of the nearness of the car and of the sounding of the warning, coupled with the request of a person in like danger induced by no fault of his own to stop the automobile until the car should pass? To proceed when so admonished would indicate a heedless disposition to risk an apparently obvious danger to life, limb and property. Nothing resembling this situation or condition, this manifest disregard of personal safety with knowledge of the danger, appears in the Riedel Case.

And by whose negligence was this situation produced? Though, as we have said, the motorman could have seen the automobile if he had been looking for it, and could have stopped the car to permit the plaintiff to pass safely over the track, yet he, having the right of way, lawfully was warranted in assuming that a traveler would see the car, for as we have said each was equally visible to the other, and would stop and not incur the danger sure to follow if he undertook to cross the track in the light of these circumstances. "If a person be seen upon the track, who is apparently capable of taking care of himself, the driver may assume that he will leave the track before the car reaches him, and this presumption may be indulged so long as the danger of injuring him does not become imminent. * * So the driver has a right to suppose that a person, when duly warned, will not attempt to cross the street immediately in front of a car; and, if due warning is given and not heeded, and the driver

cannot avert the accident, although he endeavors so to do, the injured person cannot recover." Booth, Street Railways (2d Ed.), § 305; Thompson, Negligence, § 1389.

The evidence establishes beyond question that plaintiff was guilty of contributory negligence of such a character as to bar him from any right of recovery (*Northern Pac. R. Co. v. Freeman,* 174 U. S. 379), and therefore the lower court erred in overruling defendant's demurrer to the evidence.

Our opinion is to reverse the judgment, sustain the demurrer, and enter judgment for defendant.

*Reversed and rendered.*