## CHARLESTON.

MAGGIE J. BLACKWOOD *v.* MONONGAHELA VALLEY TRACTION COMPANY.

Submitted February 20, 1923.   Decided March 18, 1924.

1. STREET RAILROADS.—*Public has Equal Right to Use of Streets.*

   The public has equal right with a street railway to the use of the streets at street crossings, each being required to exercise due care.   (p. 6).

2. SAME—*Must use Ordinary Care and Sound Warning at Crossing.*

   Those in charge of a street car or motor standing at a street crossing must, before starting the same, use due care to see that no other vehicle is in dangerous proximity; and to this end, if necessary, sound a proper warning.   (p. 6).

3. TRIAL—*Instructions Ignoring Contributory Negligence Erroneous.*

   When contributory negligence is relied on, an instruction directing a verdict in favor of plaintiff which omits any reference to the facts tending to establish contributory . negligence, and entirely ignores such defense, is erroneous and such error is not cured by other instructions submitting such defense to the jury.   (p. 6).

4. STREET RAILROADS—*Failure to Sound Warning Immaterial Where Plaintiff Knew Car Was Approaching.*

   Negligence cannot be predicated on a failure to give a warning signal, so as to render a street railway company liable,

where the person injured by the car had, in fact, knowledge
of its approach in sufficient time to avoid the injury.   (p. 7).

Error to Circuit Court, Marion County.

Action by Maggie J. Blackwood against the Monongahela
Valley Traction Company.   Judgment for plaintiff, and de-
fendant brings error.

*Reversed and remanded.*

*Tusca Morris, Osman E. Swartz,* and *A. J. Colborn,* for
plaintiff in error.

*Haymond & Haymond* and *Shaw & Shaw,* for defendant in
error.

LITZ, JUDGE:

Plaintiff sued in trespass on the case to recover damages to
her automobile resulting from its collision with defendant's
electric motor or locomotive, No. 1000, and passenger car No.
238, at the intersection of Euclid Street and East Park Ave-
nue in the city of Fairmont.   To the judgment of the circuit
court upon the verdict in favor of plaintiff for $378.15 de-
fendant prosecutes this writ of error.

The automobile was a second hand, 1917 model, Maxwell
five passenger touring car, purchased by plaintiff for $500.00
three weeks before.   It was being operated at the time of the
collision by plaintiff's husband, James F. Blackwood.   He
had driven the car two or three hundred miles, but was
otherwise of little experience as a chauffeur.

Plaintiff and her husband had lived together for about
three years on Maryland Avenue, just east of Euclid Street,
a block and a half from, and in sight of, the intersection of
Euclid Street and East Park Avenue.   East Park Avenue
is a paved street running east and west, 34 feet in width be-
tween curbs.   Euclid Street extends north and south from
Maryland Avenue across East Park Avenue, 38.6 feet in
width between property lines and 23.9 feet from curb to
curb.   On account of the unevenness of the right side of
Euclid Street, traffic used the left side of the street at the
time of the accident in approaching East Park Avenue.

The main line of the Traction Company is in approximately

the center of East Park Avenue, and a passing switch or siding, 418 feet long, is constructed between the main line track and the south curb of the Avenue. About 100 feet of this passing switch is to the left or west of Euclid Street, and the remainder on the right or east side. The view of one approaching East Park Avenue on Euclid Street is somewhat obstructed by a frame residence and hedge on the left (southwest) corner and a frame house and porch on the right (southeast) corner. The switch and main line tracks are on a grade of 4.30 per cent. declining from the eastern point of the switch westward. Euclid Street descends toward East Park Avenue on a grade of 4.33 per cent. The paving of East Park Avenue extends to the Avenue property line on the south side at the intersection with Euclid Street, a distance of 30.7 feet from the center of the main line track.

On the evening of August 29th, 1919, about eight o'clock before dusk, James F. Blackwood, accompanied by Charles G. White as his guest, left the former's home on Maryland Avenue in plaintiff's car. Before leaving Blackwood had seen defendant's motor No. 1000 standing on the main track at the intersection of Euclid Street and East Park Avenue, the front end being near the eastern curb line of Euclid Street extended. He knew it was en route westward and had stopped on the main line to await the passing over the switch of a passenger street car going east.

He drove west to Euclid Street, thence north, on the left side of Euclid Street to East Park Avenue, and crossing the car line switch in front of an on-coming passenger street car from the west, the automobile was struck by the motor as he attempted to pass over the main track. The motor continued to move, and forcing the automobile against the street car, which had stopped under emergency brakes, immediately west of the crossing, shoved the automobile and street car several feet backward. The automobile was demolished and its occupants injured. The motor weighed about forty tons. No warning of its movement was given, nor does it appear that the brakes were applied until after the collision.

Blackwood stated he was operating the car in low gear about eight miles per hour, and sounded its horn as he entered

on to East Park Avenue; that he was about ten feet from East Park Avenue (40.7 feet from the center of the main line track) when he first saw the street car entering the switch, about ninety feet away; at this time also discerning the motor standing, without any indication of immediate movement; that he could then have stopped before reaching the tracks or turned to the right up East Park Avenue; that his attention being drawn to the street car, and thinking that the motor would not start without warning, he did not observe it further on approaching the tracks, and was for the first time aware that it had moved when his car was struck. Blackwood is corroborated by White, who says the automobile was going only five or six miles an hour.

A number of witnesses for plaintiff and defendant saw all or parts of the collision. Their evidence presents questions for the jury, involving the speed, location and movements of the three vehicles.

Numerous matters are presented as constituting error, of which the following will be noted:

(1) A witness for plaintiff was permitted to state that the accident would not have happened had the motor remained stationary until the automobile passed. This of course is a self-evident fact and, therefore, could not have prejudiced the defendant.

(2) The statement of the witness, James F. Blackwood, that the automobile was worth $500.00, is objected to on the ground that he was not qualified as an expert on automobile values. He had some acquaintance with automobiles and knew what this car had cost three weeks before. The extent of his knowledge could have been tested on cross-examination. A witness with but slight information on the subject may give his opinion on the value of an article. *Tucker* v. *Colonial Fire Ins. Co.*, 58 W. Va. 43; *Cochran* v. *Craig*, 88 W. Va. 281.

(3) Another witness for plaintiff was permitted to state that plaintiff's automobile was going down Euclid Street towards East Park Avenue, immediately before the accident, "at a moderate rate of speed". The witness was unable to give the rate of speed in miles per hour, although he had fairly observed its progress. This evidence is objected to upon the

authority of *Colebank* v. *Standard Garage Co.*, 75 W. Va·, 389, holding improper the opinion of a witness that an automobile was being operated at an "unreasonable" rate of speed. In that case it was charged that by reason of the negligent operation of the automobile a pedestrian on the road had been struck and seriously injured. The court in passing upon the question, said: "Whether the rate of speed was reasonable or unreasonable was for the jury to say upon proof of facts and circumstances in that relation—not for any witness to say. It was an issue for the jury to determine upon evidence as to the surroundings and the actual rate of speed the automobile was making. Instead of introducing such evidence, so that the jury could express their own opinions therefrom, they were asked to take and use as their own the opinions of witnesses on a matter so closely related to the issue of negligence which they were trying that it was virtually the same thing". So it was the precise question there, as to whether the automobile was driven at an "unreasonable" speed. The witness here was not attempting to give an opinion as to whether the car was being driven at a safe or reasonable rate of speed. He was merely indicating the degree of its movement. Moderate speed means moderated speed, reduced speed, less than usual speed. *Clare, Adm'x. etc.* v. *Providence & S. S. Co.*, 20 Fed. 535; *The City of Atlanta* v. *The D. G. Foley*, 26 Fed. 456. We do not think the defendant was prejudiced by this testimony, especially in view of the fact that the evidence does not tend to show that the plaintiff was operating the automobile at an excessive rate of speed.

(4)   James F. Blackwood was permitted to testify that he had the automobile "under control" when he came down Euclid Street on to East Park Avenue; and James G. White also stated that at the time of and immediately before the accident Blackwood had the automobile under control. These statements are objected to as unwarranted expressions of opinion. Both witnesses were riding in the car. They had testified in detail as fully as possible concerning the pertinent facts. Blackwood had stated that he was driving the car in low gear about eight miles per hour and, after seeing the street car, could have stopped it within its length before

reaching the tracks or turned to the right and proceeded up East Park Avenue. White had also said in effect that Blackwood was driving the machine carefully, and that it was in first or second gear, going at a rate of not more than five or six miles per hour. In view of this situation we are of opinion that the defendant was not prejudiced by the evidence complained of.

(5) Plaintiff's Instruction No. 2 told the jury that the rights of plaintiff and defendant in the use of the crossing are equal, each being required to exercise due care in such use.

It is admitted, as abstract law, that the public has equal right with a street railway company to the use of streets at street crossings, but it is contended that the rule should not be given to the jury under the facts in this case. Defendant insists that the jury should be told only of the exception to the rule, as follows: The vehicle first reaching the crossing obtains priority to its use. Applying the exception, it is said that the motor, having first reached the crossing, the automobile should have stopped and awaited its movement.

The exception to the rule does not mean that one vehicle may by stopping at a street crossing hold up traffic until it sees fit to move out. It means only that the vehicle which appears to be prior in movement over the crossing, whether it is merely approaching or has actually reached the crossing and stopped, should be accorded priority. This principle is applied in the case of *Burdette* v. *Henson*, handed down simultaneously with this opinion, wherein it is held that under a statute giving right-of-way to a driver approaching on an intersecting street from the right over vehicles approaching from the left, he is not relieved of the duty to use reasonable care to avoid collision with such vehicles; and that the driver of a vehicle approaching from the left in such case is not required to stop and give way to the vehicle approaching from the right, where he has no reason to anticipate that he cannot cross the intersection in safety, but may assume that the driver of the other vehicle will exercise due care in approaching and crossing the intersection. It is required that this principle be observed to facilitate traffic and insure safety to

the public.   The law is stated in Babbit on Motor Vehicles, 3d Edition, as follows:

> Sec. 1892.   "The more recent cases show a decided and proper tendency which we notice over and over again in various situations to lay down the general principle that a driver on our crowded highways today has a right to assume that others will exercise ordinary prudence.   This is common sense and good law as neither street cars or motor vehicles would be of much use to the general public if they had to be driven on the theory that they must avoid persons or vehicles darting across their course as if such were the rule then no vehicle could ever safely be driven much faster than a man could walk.   The public, however, demands speed in transportation and this demand is properly reflected in the development of the law.   So a driver of an automobile may assume that a motorman will use reasonable care to avoid running him down and will drive at reasonable speed, or at least not increase its speed.
>
> Sec. 1896.   "A motorman of a standing street car must use care to see that no vehicle is in dangerous proximity before he starts his car."   Citing *Borg* v. *Des Moines City Ry. Co.,* (Iowa) 181 N. W. 10.
>
> "A street car company should give proper warning of the approach of its cars at street crossings.   For a failure to do so it will be guilty of negligence."   *Ashley Admrx.* v. *Traction Co.,* 60 W. Va. 307.

(6)   The defendant also complains of plaintiff's Instruction No. 5, which informed the jury that it was the duty of the defendant to give warning of the approach of its street car and motor No. 1000, and that failure to do so was negligence on its part.

We think this instruction was wrong in so far as requiring a signal of the street car's approach.   The driver of the automobile said he observed it in time to stop before going on the tracks.   He knew of the car's presence.   The signals could have served no further purpose.

Negligence cannot be predicated on a failure to sound the gong or bell, so as to render the street railway company liable, where the person injured by the car had, in fact, knowledge of its approach in sufficient time to avoid the injury·   *Hot Springs St. Ry. Co.* v. *Hildreth,* 72 Ark. 572, 82 S. W. 247.

See also Sec. 1529, Elliott on Railroads, Vol. 3, 3d Ed.; Sec. 380, Vol. 2, Nellis on Street Railways, 2d Ed.; Sec. 652 Berry on Automobiles, 3d Ed.; *Williamson* v. *Met. St. Ry. Co.,* 60 N. Y. Sup. 478.

(7)   In accordance with this holding, defendant's Instruction No. 12, refused, which would have told the jury that if the street car stopped before reaching the crossing, failure of the motorman thereon to give a signal of its approach does not constitute negligence on the part of defendant, should have been given.

(8)   Defendant's Instruction No. 7, refused, would have informed the jury that the mere fact of injury to plaintiff's automobile while being operated across the street car line raises no presumption of negligence against the defendant. We think this was a proper instruction to go to the jury.

(9)   Plaintiff's Instruction No. 6, given:

"The Court instructs the jury that if they believe from all the evidence and circumstances proven in this case that the motorman operating defendant's motor known as 'One Thousand' at the time of the accident mentioned in evidence did not use ordinary care in starting said motor, or did not use ordinary care to check said motor, when he saw, or in the exercise of ordinary care ought to have seen plaintiff's automobile, and that said automobile was crossing or was about to cross on East Park Avenue, and across and on the tracks in dangerous proximity to said motor, and if the jury further believe from the evidence and circumstances proven in the case, that by reason of the failure of said motorman on said motor to exercise ordinary care in starting said motor, or in failing to use ordinary care to check the same after starting it, the automobile of the plaintiff was injured and damaged, then the jury should find for the plaintiff."

This instruction is criticized because of its double aspect, and further for the reason that it is made binding without comprehending the defense of contributory negligence. "When contributory negligence is relied on, an instruction directing a verdict in favor of plaintiff which omits any reference to the facts tending to establish contributory negligence, and entirely ignores such defense, is erroneous

and such error is not cured by other instructions submitting such defense to the jury". *Culp* v. *Railway Co.*, 77 W. Va. 136. For such omission the instruction under consideration is plainly erroneous.

(10) The defendant persistently argues that the driver of the automobile was negligent as a matter of law, but we do not feel justified in adopting this view. Although Black-wood admits that he knew the motor had stopped at the crossing to await the passing of the street car over the switch track and that the street car was entering the switch about ninety feet away at the time he first observed it, he says he did not anticipate the starting of the motor before he could cross the tracks as he saw no one on it at the time he entered East Park Avenue. It seems to be admitted that no signal was given. It does not appear that the brakes were applied on the motor until the moment "when the crash occurred", neither is there evidence to justify a conclusion by the jury that the motorman (who died before the trial) was keeping a proper lookout.

Defendant raises other questions involving the giving of instructions for the plaintiff and the exclusion of others in behalf of defendant, which we do not consider well founded.

For the foregoing reasons the judgment of the circuit court will be reversed, the verdict set aside, and a new trial awarded the defendant.

*Reversed and remanded.*