Tri-City Traction Company *v.* C. W. Shepherd *and*
C. W. Shepherd *v.* Tri-City Traction Company

(No. 9145)

Submitted April 8, 1941. Decided April 22, 1941.

*H. E. DeJarnette,* for plaintiff in error.
*Richardson & Kemper* and *Sexton & Sexton,* for defendant in error.

Rose, Judge:

Tri-City Traction Company claims error in a judgment of the Circuit Court of Mercer County against it and in favor of C. W. Shepherd for $208.00, based upon injury to Shepherd's truck in a collision between it and a trolley car of the traction company, which occurred on a concrete highway about twenty feet outside and to the east of the corporation limits of the City of Bluefield.

This highway is a continuation of Princeton Avenue in the City of Bluefield, and extends substantially east and

west running parallel and near to the Norfolk & Western Railway tracks in the vicinity involved in this controversy. A berm which, from the map in evidence, appears to be in width from eight to twelve feet, lies on the south of the highway extending to a precipitous hill. The highway is approximately level for the distance involved in this suit, except that there is a rise in the surface at the point of the accident to bring it to the level of the bridge and intersecting street car track from the north.

The traction company operates a trolley line in and between the cities of Princeton and Bluefield. The trolley track enters Bluefield by a bridge or viaduct across the Norfolk & Western Railway tracks, intersecting the highway at approximately a right angle. The track then turns to the right by a wide curve, completely crossing the highway and forming an arc which, at its most southerly point, is distant from the normal line of the southern curb by about the distance between the rails. The track then completely re-crosses the highway (now Princeton Avenue) and then makes a turn to the left or west and continues on into the city between the paved portion of the street and the Norfolk & Western Railway tracks. The trolley track thus lies on the road and Avenue approximately in the form of a question mark with its top to the eastward. The pavement is widened so as to cover and extend beyond the trolley track at the wide part of its curve southward.

The collision occurred on the pavement and near to its southern edge, where the trolley track emerges therefrom to begin the arc above referred to. On February 3, 1940, the traction company brought suit before a justice of Mercer County against Shepherd for the sum of $300.00 damages, filing an itemized statement showing a claim actually of $208.96. On the same day before the same justice, Shepherd sued the traction company for a like amount, but apparently filed no bill of particulars. On February 23, 1940, separate trials were had in these two cases, resulting in the dismissal of each case at the cost of the respective plaintiffs. Both plaintiffs appealed, and by agreement, the two cases were tried together in

the Circuit Court of Mercer County resulting in a judgment for $208.00 against the traction company and in favor of Shepherd. This writ of error followed.

On the trial in the circuit court, Shepherd testified that he was driving a Ford ton-and-a-half truck loaded with 9500 pounds of coal, with his wife and thirteen-year-old daughter with him in the cab; that the road was "right slick," and that "some places it was fairly bad and some were not so bad"; that his speed was from twelve to fifteen miles an hour, decreasing as he approached the top of the rise at the end of the bridge; that he knew that the street car track crossed the highway at this point; that he saw the street car approaching when it was between the middle and the north end of the bridge (shown elsewhere to be 100 feet in length), at which time he was about an equal distance from the crossing and on his own right-hand side of the street; that he could not say how fast the car was traveling; that he saw the car emerge from the bridge and enter the crossing, but cannot say how far he was from the crossing at that time; that he had crossed the first track and had the front end of his truck over the eastern track when the car struck the truck and shoved it over, "and I cut the other way and cut into the bank"; that the trolley car and his truck were both in motion at the time of the impact; and that the left front corner of the trolley car struck the truck and scraped its body from a point immediately back of the front wheel to the rear end.

Shepherd's wife testified that she was riding in the truck with her husband and daughter; that she was not familiar with the road; that there was snow on the road; that the truck was making from twelve to fifteen miles an hour; that she first saw the car when it was "on the far end of the bridge" (meaning the north end), at which time the truck was about fifty feet from the crossing, although before the justice she was unable to estimate this distance; that she watched the street car as it came across the bridge and onto the road; that when the truck arrived at the crossing, it was struck by the trolley car, at which time, the truck was on its own right-hand side of the

road and both vehicles were in motion; that the truck was knocked to the side by the impact; and when asked where the street car was at the time of the collision, replied "I would say across the road."

The daughter is not called as a witness. A repairman testified as to the damage done to the truck, and stated that the injury to the truck showed that it had been "side-swiped" or had "side-swiped" something "awfully hard"; that the injury was in the nature of a side-swipe from the front all the way to the back. There was no evidence of any obstruction of view between the trolley car and the truck, and no evidence that Shepherd made any effort to stop or to slow down his vehicle to avoid the collision.

For the traction company the motorman testified that he approached the edge of the highway at a speed of about six to eight miles an hour; that he blew the regular whistle alarm as he crossed the bridge; that he saw Shepherd's truck when the car was about the middle of the bridge, at which time the truck was about three hundred feet from the crossing; that when the car entered the highway the truck was about one hundred feet from the crossing; that he stopped his car as soon as he saw that the truck would not stop, beginning the effort when the car was about fifty feet distant; that the car was stopped when struck by the truck, which merely "went across the end" of the street car, and "dragged the front end of the street car off," at which time the car had turned sufficiently in the curve to make the left front corner of the car its most advanced point; that the impact occurred when the car was eighteen inches or two feet back of the southern curb line of the highway.

One passenger on the car testified that the motorman blew the whistle about the middle of the bridge; that the truck was about 150 feet from the crossing when the whistle was blown; that the car was stopped when the collision occurred, at which time the car was "clear across the main part of the road"; and that the truck went onto the berm as a result of the impact.

Another passenger says that the motorman sounded

the alarm when about half way across the bridge; that he first saw the truck "down the road" about forty or fifty yards after the car came off the bridge; that the collision occurred when the car was about half way across the road; that the truck "glanced on across the front" end of the car onto the berm. On cross-examination, he says that the distance of the truck from the crossing was forty or fifty yards when the car was in the middle of the bridge, and only ten or fifteen yards distant when it entered the highway.

Does this evidence make a *prima facie* case for Shepherd? What thing done or omitted by the motorman can be called negligence? Shepherd saw the trolley car from the time it was in the middle of the bridge; he saw it did not stop, but was proceeding to cross the highway. He made no effort to slow down or stop his truck. Wherein was the motorman at fault? Counsel for Shepherd vigorously insist upon the rule that the rights of the trolley car and the truck at this crossing were equal. This seems to be well established law. *Ashley* v. *Kanawha Valley Traction Co.*, 60 W. Va. 306, 55 S. E. 1016, 9 Ann. Cas. 836; *Riedel* v. *Traction Co.*, 69 W. Va. 18, 74 S. E. 174; *Helvey* v. *Princeton Power Co.*, 84 W. Va. 16, 99 S. E. 180; *Blackwood* v. *Monongahela Valley Traction Co.*, 96 W. Va. 1, 122 S. E. 359. This means that in order that the truck should have a superior right over the trolley car at this crossing, some additional fact must appear in evidence, making the trolley car's right inferior. What showing has Shepherd made in this regard? None whatever. He simply proves, at most, that the two vehicles collided on the crossing. This raises no presumption of negligence against the traction company, and no facts presented by Shepherd's evidence prove any such negligence. We are, therefore, of opinion that the most favorable construction toward Shepherd of the evidence in this case does not support his claim or judgment.

On the other hand, the traction company probably makes a *prima facie* case for recovery against Shepherd. The latter's witnesses give no estimate of the distance of the truck from the crossing when the street car en-

tered the highway, while the traction company's witnesses place the truck at least one hundred feet from the crossing. This testimony must, therefore, be accepted as established fact in the case. The general rule is that where two vehicles have equal right to a crossing, the one which enters the crossing first at a reasonable rate of speed, while the other is at a sufficient distance to be controlled and stopped, has the right of way. This rule is stated in 2 Nellis on Street Railways (2d Ed.), section 388, as follows:

"The rule of the road in relation to vehicles approaching a street crossing that the first to reach the crossing, traveling at a reasonable rate of speed, has the right to pass over first, applies to fire engines and trucks and trolley cars, in the absence of legislative enactment, municipal regulation or local custom."

In the case of *Mollohan v. Charleston Interurban Railroad Company*, 108 W. Va. 490, 151 S. E. 698, Judge Woods, in discussing the relative rights of an automobile and street car at a crossing, said:

"In other words, it was the duty of the driver of the automobile, before entering upon the tracks of the street car, to use ordinary and reasonable care in ascertaining whether or not a street car was approaching, and to allow it to pass first, if the respective speed of the street car and the automobile were such that the automobile could not clear the tracks before the street car would arrive."

It is clear, therefore, that Shepherd has proved no negligence on the part of the operator of the trolley car proximately causing the injuries complained of. But, on the contrary, the evidence of both parties tends to establish negligence on his own part from which the accident resulted.

The traction company asked and was refused the following instruction:

"The Court instructs the jury that when the motorman of the street car entered upon the highway crossing immediately before the collision, and saw C. W. Shepherd's truck approaching the crossing, the motorman had the right to assume that the driver of the truck would slow down or stop his truck in time to avoid a collision, and had the right to proceed with his street car upon the crossing relying upon such assumption. And if they believe from the evidence that the motorman sounded the alarm immediately prior to entering upon the crossing and that, when he entered upon the crossing, the truck was at a safe distance therefrom and that the driver of the truck had ample time in which to stop and avoid a collision, but that the driver of the truck proceeded along the highway and ran his truck against the front of the street car and caused damage thereto, they shall find for the Tri-City Traction Company and assess its damages at the reasonable cost of repairing the injury to the street car."

To this instruction, the following objection was made:

"This instruction is objected to by counsel for C. W. Shepherd because it doesn't state the applicable law in this particular case. We are not dealing with a railway company which operates long and heavy trains, and which, by reason of its length and weight, is not capable of being brought to a stop within a reasonable distance. The franchise of the Tri-City Traction Company gives it no paramount right over our highways and streets and its rights at the point of this collision are certainly no greater than the public using the highway."

From what has been said in this opinion, it will appear that the objections specifically taken to the instruction were not good. The last sentence of the instruction correctly propounds the general law, and the rule as specifically approved in this state. The first sentence of the instruction, however, by impliedly assuming certain facts to have been proved in the case, might make it

subject to criticism, but after careful scrutiny of the language used and the full evidence of the case, it will appear that nothing is assumed as proved, directly or by implication, except that which is supported by substantial evidence and is undisputed. We believe, therefore, that the court erred in not giving this instruction.

It follows that the action of the trial court in refusing this instruction, and in refusing to set aside the verdict of the jury and award the traction company a new trial, must be reversed and the case remanded.

*Reversed and remanded.*